IN THE COURT OF APPEALS OF TENNESSEE
WESTERN SECTION AT JACKSON
_____

**ROBERT MABON, as surviving**
**spouse and personal representative**
**of the Estate of JEWEL MAE MABON,**

      Plaintiff-Appellant,

Vs.

**JACKSON-MADISON COUNTY**
**GENERAL HOSPITAL and GEORGE**
**E. THOMAS, M.D.,**

      Defendants-Appellees.

Madison Circuit No. C-92-317

C.A. No. 02A01-9702-CV-00039

**FILED**

**September 08, 1997**

**Cecil Crowson, Jr.**
**Appellate Court Clerk**

FROM THE CIRCUIT COURT OF MADISON COUNTY
THE HONORABLE WHIT LAFON, JUDGE

Al H. Thomas; Ira M. Thomas of Memphis
For Plaintiff-Appellant

Marty R. Phillips, Timothy G. Wehner; Rainey, Kizer,
Butler, Reviere & Bell, P.L.C. of Jackson
For Defendants-Appellees

*AFFIRMED*

Opinion filed:

**W. FRANK CRAWFORD,**
**PRESIDING JUDGE, W.S.**

CONCUR:

**ALAN E. HIGHERS, JUDGE**

**DAVID R. FARMER, JUDGE**

      This is a medical malpractice case.  Plaintiff, Robert Mabon (Mabon), the surviving

spouse and personal representative of the Estate of Jewel Mae Mabon (Mrs. Mabon), appeals the

order of the trial court granting summary judgment in favor of defendant, George E. Thomas,

M.D.

On November 15, 1991, Mrs. Mabon entered the emergency room at Jackson-Madison County General Hospital (Hospital) in Jackson, Tennessee complaining of severe abdominal pain, nausea, and vomiting. Mrs. Mabon had a history of arteriosclerotic heart disease. She was admitted to Hospital, and Dr. Thomas, who had been treating Mrs. Mabon for about five years, discussed the possibility of surgery with her and her family. Dr. Thomas decided not to perform surgery, and Mrs. Mabon died approximately sixteen hours after her arrival at Hospital.

On November 12, 1992, Mabon filed a complaint against Dr. Thomas alleging that he breached his duty of care to Mrs. Mabon in one or more of the following ways: failure to take customary, reasonable diagnostic steps; failure to treat properly; and failure to respond in a reasonably prudent manner.[1] The complaint alleges that Mrs. Mabon was diagnosed with a small bowel obstruction upon her admission to Hospital, but that no surgery or other procedures were undertaken to correct the obstruction for approximately twelve hours. The complaint further alleges that these acts and omissions and the failure to provide proper medical care caused Mrs. Mabon to have a loss of chance of survival and caused Mabon to suffer the loss of consortium of his wife.

On December 18, 1992, Dr. Thomas filed an answer denying, *inter alia*, the allegations in the complaint charging him with any negligence, medical malpractice, or careless act or omission. In his answer, Dr. Thomas asserts that he did not consider Mrs. Mabon to be an acceptable surgical risk. Given Mrs. Mabon's past medical history and condition at that time, he felt that general anesthesia presented a considerable risk that Mrs. Mabon would die on the operating table. He further asserts that he discussed this fully with Mrs. Mabon and her family and that they agreed that treatment would consist of efforts to keep the patient comfortable and that Mrs. Mabon's family requested that no resuscitative measures be instituted. Dr. Thomas asserts that he exercised his best medical judgment with the degree of care, skill, ability, and learning as was regularly and customarily exercised by other competent physicians in the

---

[1] Mabon filed the complaint against Hospital, Dr. Thomas, and Dr. Elizabeth Pritchard. On June 17, 1993, the trial court entered an agreed order dismissing the case with prejudice as to Dr. Pritchard. In addition, in an order entered on May 7, 1996, Mabon voluntarily dismissed his claim against Hospital. Consequently, only the claim against Dr. Thomas is at issue in this appeal.

community at that time. He also asserts that all medical care, attention, examinations, treatments, prescriptions, and procedures rendered or furnished by him were usual, proper, and customarily accepted for Mrs. Mabon's condition at that time and that he was not guilty of negligence. He further asserts that he did not guarantee to cure Mrs. Mabon or to place her in exactly the position that she was in prior to the time he first examined her on November 15, 1991. Additionally, he maintains that he possessed and exercised that degree of skill, care, and learning ordinarily possessed and exercised by other competent members of his profession and specialty in his community on the dates of treatment.

Dr. Thomas filed a motion for summary judgment on March 24, 1994. In support of this motion, Dr. Thomas filed an affidavit in which he states that he was and is familiar with the recognized standard of acceptable professional practice in the medical community of Jackson, Tennessee for physicians engaged in the medical practice of general, vascular, and thoracic surgery. Dr. Thomas further states that in his treatment of Mrs. Mabon he conformed to this recognized standard of acceptable professional practice.

In opposition to Dr. Thomas's motion for summary judgment, Mabon filed the affidavit of Ramon A. Shane, M.D. on August 24, 1994. Dr. Shane is licensed to practice medicine in Missouri and is board certified in general surgery and thoracic surgery. Dr. Shane states in his affidavit that he is familiar with the recognized standard of acceptable medical practice in general surgery, thoracic surgery, and other related fields of medicine in an area such as Jackson, Tennessee and at a facility the size of Hospital, and that the standard of care in Jackson and at Hospital would be comparable to the cities and facilities at which he has practiced medicine. The affidavit further states that the treatment rendered by Dr. Thomas failed to meet the accepted standard of medical care that Mrs. Mabon could expect and that should have been available in a city the size of Jackson, Tennessee. Dr. Shane opines, based upon a reasonable degree of medical certainty, that Mrs. Mabon suffered damages, and ultimately lost her life, as a direct and proximate result of Dr. Thomas's negligence.

Subsequently, Dr. Shane's deposition was taken and filed as part of the record. Dr. Shane testified that there is a national standard of care for physicians and that "[I]f you had this case in New York city or San Francisco or Chicago or Memphis, Tennessee, or Jackson, they're all the same." Both parties filed memoranda in support of their arguments. On January 14, 1997,

3

the trial court entered an order granting summary judgment to Dr. Thomas. The trial court found that Dr. Shane was not qualified to testify as an expert, pursuant to T.C.A. § 29-26-115, as to the recognized standard of acceptable professional practice required of a general surgeon practicing in Jackson, Tennessee or in a similar community in 1991. As such, the trial court found that there was no genuine issue of material fact and that Dr. Thomas was entitled to a judgment as a matter of law.

Mabon appeals the judgment of the trial court and presents one issue for review: whether the trial court erred in granting summary judgment to Dr. Thomas.

A trial court should grant a motion for summary judgment only if the movant demonstrates that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. Tenn. R. Civ. P. 56.03; *Byrd v. Hall*, 847 S.W.2d 208, 210 (Tenn. 1993); *Dunn v. Hackett*, 833 S.W.2d 78, 80 (Tenn. App. 1992). The party moving for summary judgment bears the burden of demonstrating that no genuine issue of material fact exists. *Byrd*, 847 S.W.2d at 210. On a motion for summary judgment, the court must consider the motion in the same manner as a motion for directed verdict made at the close of the plaintiff's proof; that is, "the court must take the strongest legitimate view of the evidence in favor of the nonmoving party, allow all reasonable inferences in favor of that party, and discard all countervailing evidence." *Id*. at 210-11. In *Byrd*, the Tennessee Supreme Court stated:

> Once it is shown by the moving party that there is no genuine issue of material fact, the nonmoving party must then demonstrate, by affidavits or discovery materials, that there is a genuine, material fact dispute to warrant a trial. In this regard, Rule 56.05 provides that the nonmoving party cannot simply rely upon his pleadings but must set forth *specific facts* showing that there is a genuine issue of material fact for trial.

*Id*. at 211 (citations omitted) (emphasis in original). The phrase "genuine issue" as stated in Rule 56.03 refers to genuine factual issues, and does not include issues involving legal conclusions to be drawn from the facts. *Id.* Where a genuine dispute exists as to any material fact or as to the conclusions to be drawn from those facts, a court must deny a motion for summary judgment. *Id.* (citing *Dunn*, 833 S.W.2d at 80). We must decide whether the legal conclusions on which the trial court's grant of summary judgment was based are correct. Our review is de novo on the record with no presumption of the correctness of the trial court's conclusions of law. *Union Planters Nat'l Bank v. American Home Assurance Co.*, 865 S.W.2d

4

907, 912 (Tenn. App. 1993).

With these principles in mind, we first look at a plaintiff's burden in a medical malpractice case as set forth in the pertinent provisions of T.C.A. § 29-26-115:

> **29-26-115. Claimant's burden in malpractice action — Expert testimony — Presumption of negligence — Jury instructions.** — (a) In a malpractice action, the claimant shall have the burden of proving by evidence as provided by subsection (b):
> (1) The recognized standard of acceptable professional practice in the profession and the specialty thereof, if any, that the defendant practices in the community in which he practices or in a similar community at the time the alleged injury or wrongful action occurred;
> (2) That the defendant acted with less than or failed to act with ordinary and reasonable care in accordance with such standard; and
> (3) As a proximate result of the defendant's negligent act or omission, the plaintiff suffered injuries which would not otherwise have occurred.
> (b) No person in a health care profession requiring licensure under the laws of this state shall be competent to testify in any court of law to establish the facts required to be established by subsection (a) unless he was licensed to practice in the state or a contiguous bordering state a profession or specialty which would make his expert testimony relevant to the issues in the case and had practiced this profession or specialty in one of these states during the year preceding the date that the alleged injury or wrongful act occurred. This rule shall apply to expert witnesses testifying for the defendant as rebuttal witnesses. The court may waive this subsection when it determines that the appropriate witnesses otherwise would not be available.

T.C.A. 29-26-115 (a)-(c) (1980).

In the instant case, the existence or nonexistence of a disputed material fact depends on the testimony of Mabon's witness, Dr. Shane. The trial judge has broad discretion in determining the qualifications for admissibility of testimony of expert witnesses. *Shelby County v. Barden*, 527 S.W.2d 124, 131 (Tenn. 1975).

In *Ayers v. Rutherford Hospital, Inc.*, 689 S.W.2d 155 (Tenn. App. 1984), the plaintiff brought an action against a physician for medical malpractice allegedly committed during childbirth at a hospital in Murfreesboro, Tennessee. *Id.* at 156. The child was later admitted to Vanderbilt University Medical Center in Nashville, Tennessee because of a seizure disorder. *Id.* The trial court granted summary judgment for the defendant physician, and on appeal, the seminal issue before the court was the admissibility of the testimony of the plaintiff's expert witness, Dr. Abramson. *Id.* at 163.

5

The allegations in the complaint required the plaintiff to prove the standard of care required of physicians practicing obstetrics in Murfreesboro and a failure to conform to such standard of care by the defendant physician. *Id.* at 162. In opposition to the defendant's motion for summary judgment, the plaintiff filed the affidavit of Dr. Abramson, who was licensed in the Washington D.C., Maryland, and Virginia. *Id.* at 157. In his affidavit, Dr. Abramson stated that he was familiar with the standard of care as it would pertain to a community such as Murfreesboro, Tennessee and that the defendants breached that standard. *Id.* at 158. The plaintiff also submitted Dr. Abramson's deposition, in which he testified:

> [T]hat he had never been to Murfreesboro, did not know where in Tennessee the city was located, had no knowledge of whether Murfreesboro was a large or small town, knew no individuals in Murfreesboro, knew no physicians, other than the defendants in this suit, who practiced medicine in Murfreesboro, and that he did not know where defendant physicians were trained or the size of the hospital in which [the child] was born.

*Id.* at 163. He further stated that the standard of care does not vary throughout the country and that there is a national standard that does not change with locality. *Id.*

The defendant submitted an affidavit by Dr. Boehm, who stated that the standard of care varies significantly between localities and that there is a clear difference between the standard of care in hospitals in Murfreesboro and a large teaching hospital such as Vanderbilt. *Id.* Based on this record, this Court found that the trial court did not abuse its discretion in refusing to allow Dr. Abramson's testimony as an expert. *Id.* at 163. The Court affirmed the granting of summary judgment. *Id.*

In *Cardwell v. Bechtol*, 724 S.W.2d 739 (Tenn.1987) the Supreme Court affirmed the trial court's grant of a directed verdict at the close of the plaintiff's evidence because "no admissible expert testimony existed on the record relevant to the standard of care in the locality of an osteopath in similar circumstances." *Id.* at 754. The Court said:

> Although the standard of care may be established by the defendant's own admissions, *Tutton v. Patterson*, *supra*, at 270, that is not the case here. Moreover, *Searle v. Bryant*, *supra*, at 65, held that T.C.A. § 29-26-115(b) "contains no requirement that the witness practice the same specialty as the defendant," but, as previously noted, the witness must be sufficiently familiar with the standard of care of the profession or specialty and be able to give relevant testimony on the issue in question. *Cf. Ison v. McFall*, *supra*. Without the requisite threshold evidence of the standard of care in the locality, regardless of the other requirements of the statute, Plaintiffs were not able to demonstrate "a breach of duty to the patient to use that degree of skill and learning which is ordinarily used under similar circumstances by members in good standing in his profession." *Merryman v. Bunch*, *supra*, 24 Tenn.App. at

6

410-411, 145 S.W.2d at 561 (citations omitted).

724 S.W.2d at 754.

In *Osler v. Burnett*, 1993 WL 90381, No. 02A01-9202-CV-00046 (Tenn. App. March 30, 1993), an unpublished opinion of this Court, the plaintiffs appealed the trial court's grant of summary judgment on the basis that their proffered expert was not familiar with the requisite standard of care. *Id.* at *1. In *Osler*, the defendant stated that the standard of care in Jackson, the community in which the defendant practiced, was different from that with which the plaintiff's expert was familiar, and the plaintiff's expert agreed. *Id.* at *1-2. The plaintiff's expert also admitted that he was not familiar with the medical standards in Jackson. *Id.* at *3. Because he was not familiar with the standard in Jackson or in a community similar to Jackson, the Court affirmed the grant of summary judgment. *Id.* at *6.

In the case before us, Dr. Shane states in his affidavit that he was familiar with the recognized standard of acceptable medical practice in an area such as Jackson, Tennessee and at a facility the size of Hospital. He further states that the standard of care in Jackson and at Hospital would be comparable to the cities and facilities at which he has practiced medicine and is the same for New York city and other large cities and, in effect, is a national standard. Dr. Shane also states that Dr. Thomas failed to meet the standard of care that "should have been available" in a city the size of Jackson, Tennessee. (Emphasis supplied). Dr. Shane's statement concerning the standard of care that "should have been available" is significant in that it illustrates that his statement in his affidavit regarding the standard of care is premised on the national standard of care and not on the standard of care for Jackson or similar communities. Admittedly, in his discovery deposition, he quite readily admits his complete lack of knowledge of Jackson's medical community:

Q:     What's the population, Dr. Shane, of Jackson, Tennessee?

A:     I don't know exactly.

Q:     How many hospitals are there in Jackson?

A:     I don't know.

Q:     Do you know if there are any colleges or universities there?

A:     No, I don't.

Q:     Do you know if there are any medical schools there?

A:      Not for sure.

Q:      Do you know how many doctors there are in Jackson?

A:      No.

Q:      Do you know what medical specialties are represented in Jackson?

A:      No, I don't.

Q:      Have you ever been to Jackson?

A:      No.

Q:      Do you know any doctors that practice in Jackson?

A:      No.

Q:      Have you ever treated any patients from Jackson?

A:      Not that I'm aware of.

Q:      Do accepted standards, that is the standard of care, do they change with time?

A:      Yes, they can.

Q:      Is the practice of medicine an exact science?

A:      No.

Q:      You can't completely practice medicine by what's called the cookbook method,     can you?

A:      No, you can't.

Q:      You've not reviewed any medical records from Jackson except in this case,         right?

A:      I don't think so that I can recall.

To qualify as an expert, a physician is not required to be familiar with all of the medical statistics of a particular community. *Ledford v. Moskowitz*, 742 S.W.2d 645, 648 (Tenn. App. 1987). However, a complete lack of knowledge concerning a community's medical resources would be contrary to knowledge of the required standard of care. The plaintiff's tendered expert must be familiar with the standard of care in the community in which the defendant practices or in a similar community. Without this requisite threshold evidence of the standard of care in the locality, a plaintiff cannot demonstrate a breach of duty. *See Cardwell*, 724 S.W.2d at 754.

Mabon contends that he has met that threshold and that this case is distinguishable from *Ayers* and *Osler* because there was evidence in those cases that the standards of care were different and that there is no proof in this case that the standard of care in Jackson, Tennessee

8

is different from that propounded by Dr. Shane. He argues that once Dr. Shane set forth his opinion that the national standard of care is the same as the standard of care in Jackson, the burden then shifted to Dr. Thomas to set forth a different standard of care for Jackson.

We respectfully disagree with this contention. It is the plaintiff who is charged with the burden of proof as to the standard of care in the community in which the defendant practices or in a similar community. T.C.A. § 29-26-115(a)(1). A plaintiff who chooses to prove the standard of care in a similar community necessarily must prove that community is similar to the one in which the defendant practices. To shift this burden to the defendant directly contradicts the plain language of the statute and would render the statute a nullity. Under the principles of summary judgment, once Dr. Thomas moved for summary judgment and submitted an affidavit stating that he complied with the standard of care in Jackson, the burden then shifted to Mabon to set forth specific facts that Dr. Thomas failed to meet the standard of care in Jackson or a similar community.

In this case, Dr. Shane's deposition testimony leads us to conclude that he is not familiar with the standard of care in Jackson, Tennessee. Moreover, we cannot accept Dr. Shane's bare assertion that the standard of care in Jackson is the same nationwide and that the level of care with which Dr. Shane is familiar *should* have been available in Jackson. This does not comply with the nonmoving party's burden on a motion for summary judgment to set forth specific facts. From our review of the record, Dr. Shane simply failed to establish that he had knowledge of the requisite standard of care in Jackson, Tennessee or in a similar community.

Without evidence as to the standard of care in Jackson or in a similar community, Mabon cannot demonstrate any breach of duty to Mrs. Mabon. *See Cardwell*, 724 S.W.2d at 754. Mabon therefore failed to carry the burdens placed on him by T.C.A. § 29-26-115. As such, there was no genuine issue of material fact, and Dr. Thomas was entitled to judgment as a matter of law. The trial court correctly granted summary judgment to Dr. Thomas.

Accordingly, the order of the trial court is affirmed. Costs of this appeal are assessed against the appellant.

_____
**W. FRANK CRAWFORD,**
**PRESIDING JUDGE, W.S.**

**CONCUR:**

_____
**ALAN E. HIGHERS, JUDGE**


_____
**DAVID R. FARMER, JUDGE**