# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
### NOVEMBER 28, 2001 Session

## MARLENA TILLEY, ET AL. v. GURPAL S. BINDRA, M.D.

### Direct Appeal from the Circuit Court for Dyer County
### No. 99-189; The Honorable Lee Moore, Judge

### No. W2001-01157-COA-R3-CV - Filed May 13, 2002

This appeal arises from a medical malpractice claim brought by the Appellants against the Appellee in the Circuit Court of Dyer County. The Appellee filed a motion for summary judgment. Following the deposition of the Appellants' expert witness, the Appellee filed a renewed motion for summary judgment. The trial court granted the Appellee's motion for summary judgment and renewed motion for summary judgment.

The Appellants appeal the grant of the Appellee's motion for summary judgment and renewed motion for summary judgment by the Circuit Court of Dyer County. For the reasons stated herein, we affirm the trial court's decision.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Circuit Court Affirmed**

ALAN E. HIGHERS, J., delivered the opinion of the court, in which W. FRANK CRAWFORD, P.J., and HOLLY KIRBY LILLARD, J., joined.

Martin L. Howie, Charles M. Agee, Jr., Dyersburg, TN, for Appellants

Marty R. Phillips, Jackson, TN, for Appellee

### OPINION

### I. Facts and Procedural History

The Appellee, Gurpal S. Bindra, M.D. ("Dr. Bindra"), is an otolaryngologist[1] who practices medicine in Dyersburg, Tennessee. On November 30, 1998, Dr. Bindra examined the Appellant, Marlena Tilley ("Mrs. Tilley"), and determined that she had a parotid mass behind her right ear which

---

[1] An otolaryngologist is a physician who specializes in disorders of the head and neck, especially disorders related to the ear, nose, and throat.

needed to be surgically removed. On December 4, 1998, Dr. Bindra performed a right partial parotidectomy on Mrs. Tilley at the Methodist Hospital of Dyersburg. Mrs. Tilley claims that her facial nerve was severed during the surgery which resulted in permanent paralysis to the right side of her face.

On November 3, 1999, Mrs. Tilley and the Appellant, Fred Tilley ("Mr. Tilley" or collectively, "the Tilleys"), filed a complaint in the Circuit Court of Dyer County against Dr. Bindra. The complaint alleged that Dr. Bindra was negligent and deviated from the requisite standard of care of a physician in Dyersburg or a similar community. The complaint alleged that as a proximate result of his negligence, Dr. Bindra damaged Mrs. Tilley's facial nerve. On November 8, 1999, the Tilleys filed an amended complaint alleging a cause of action under the theory of res ipsa loquitur. On December 28, 1999, Dr. Bindra filed an answer to the complaint.

On January 26, 2000, Dr. Bindra filed a motion for summary judgment supported by his affidavit. In his affidavit, Dr. Bindra stated that he fully complied with the standard of care required of an otolaryngologist practicing in Dyersburg in December, 1998 and was not negligent during his treatment of Mrs. Tilley. He claimed that he discussed with Mrs. Tilley that there was a risk of facial paralysis as a result of the surgery, but Mrs. Tilley elected to undergo the surgery. On June 23, 2000, the Tilleys filed a response to the motion for summary judgment supported by the affidavit of Richard J. DePersio, M.D. ("Dr. DePersio"), an otolaryngologist from Knoxville, Tennessee. In his affidavit, Dr. DePersio stated that he was familiar with the standard of care required of an otolaryngologist practicing in Dyersburg or a similar community in December, 1998. Dr. DePersio stated that Dr. Bindra failed to meet the requisite standard of care of an otolaryngologist in the state of Tennessee which resulted in injuries, damages, and losses to Mrs. Tilley. On June 30, 2000, Dr. Bindra elected not to argue his motion for summary judgment until after the deposition of Dr. DePersio.

On November 14, 2000, the deposition of Dr. Bindra was taken. On December 7, 2000, the deposition of Dr. DePersio was taken. Dr. DePersio testified that he had never been in private practice anywhere but Knoxville. He stated that he had never been to Dyersburg and did not know how many hospitals were in Dyersburg, how many beds were in the Dyersburg hospital, or how many doctors or otolaryngologists practiced in Dyersburg. Dr. DePersio testified as follows:

> Question: Have you made any attempts to learn anything about the
> medical community in Dyersburg as a part of your work in this case?
>
> Dr. DePersio: No.
>
> Question: Are you claiming in this case, Dr. DePersio, to know
> the recognized standard of acceptable professional practice for an
> otolaryngologist who practices in Dyersburg, Tennessee?
>
> Dr. DePersio: It's my understanding that the standards for Dyersburg
> are the same as the standards would be in Knoxville or anywhere

else in the state.

Question: Would they also be the same as anywhere else in the country?
Dr. DePersio: I don't think that the – legally, to the best of my understanding, it's just in this state that we're talking about, and I don't know that you look at those. Legally I don't think that Dyersburg has to be the same as New York City, but it does – and this is my understanding. I may be totally wrong. But it's my understanding that, for instance, if you had a physician from New York City come here to testify, in fact, on this case, he could not, because he doesn't practice in the state of Tennessee and is therefore not aware of what the standards are in Tennessee. That's my assumption.

Question: Is your basis for commenting on the standard of care in this case your assumption that the standard for an otolaryngologist is the same statewide in Tennessee?

Dr. DePersio: That's my understanding.

Question: And other than that you don't have any basis for commenting on the standard of care in Dyersburg; am I correct?

Dr. DePersio: Correct.

On January 25, 2001, Dr. Bindra filed a renewed motion for summary judgment. On February 20, 2001, the Tilleys filed a response in opposition to Dr. Bindra's renewed motion for summary judgment. The Tilleys also filed the supplemental affidavit of Dr. DePersio. In his supplemental affidavit, Dr. DePersio stated that subsequent to his June 23, 2000 affidavit and December 7, 2000 deposition, he had become aware of the following statistical information regarding the medical community of Dyersburg: the number of licensed beds at the Methodist Hospital of Dyersburg, the services and specialties offered by the hospital, the number and names of all physicians on the active medical staff of the hospital, and the population of Dyersburg and Dyer County. He claimed that he was familiar with the standard of care required of an otolaryngologist in Dyersburg or a similar community in December, 1998. Dr. DePersio stated that Dr. Bindra failed to meet the requisite standard of care which resulted in injuries, damages, and losses to Mrs. Tilley.

On February 22, 2001, the Tilleys filed a motion to amend the complaint to allege a claim for punitive damages under the theory that Dr. Bindra fraudulently misrepresented to Mrs. Tilley that her facial paralysis was temporary and fraudulently concealed the fact that her facial paralysis was permanent. On February 23, 2001, the Tilleys filed a motion for summary judgment. On February 26, 2001, the trial court held a hearing on Dr. Bindra's motion for summary judgment and renewed motion for summary judgment. On March 8, 2001, the trial court entered an order granting Dr. Bindra's motion for summary judgment and renewed motion for summary judgment on two grounds:

(1) Dr. DePersio was not competent to testify as an expert witness; and (2) the Tilleys failed to establish adequate proof on the issue of causation. The trial court held that the Tilleys' motions to amend and for summary judgment were moot.

On March 16, 2001, the Tilleys filed a motion to alter and/or amend the order granting Dr. Bindra's motion for summary judgment. On April 23, 2001, Dr. Bindra filed a response in opposition to the Tilleys' motion to alter and/or amend the order granting summary judgment. On April 27, 2001, the trial court held a hearing on the motion to alter and/or amend the order granting summary judgment. On May 15, 2001, the trial court entered an order denying the Tilleys' motion to alter and/or amend the order granting summary judgment. This appeal followed.

## II. Standard of Review

The standards governing an appellate court's review of a trial court's grant of summary judgment are well settled in Tennessee. See Carvell v. Bottoms, 900 S.W.2d 23, 26 (Tenn. 1995). Summary judgment is to be rendered by a trial court "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." TENN. R. CIV. P. 56.04. In ruling on a motion for summary judgment, the trial court and the appellate court must consider the matter in a light most favorable to the nonmoving party and must allow all reasonable inferences in the nonmoving party's favor. See Carvell, 900 S.W.2d at 26; Byrd v. Hall, 847 S.W.2d 208, 215 (Tenn. 1993).

The party seeking summary judgment bears the burden of demonstrating that no genuine issue of material fact exists. See Bain v. Wells, 936 S.W.2d 618, 622 (Tenn. 1997); Downen v. Allstate Ins. Co., 811 S.W.2d 523, 524 (Tenn. 1991). Once the moving party satisfies that burden, the burden then shifts to the nonmoving party to set forth specific facts establishing that there are disputed, material facts creating a genuine issue to be resolved by the trier of fact. See Byrd, 847 S.W.2d at 215. In appeals from grants of summary judgment, the appellate court must decide whether the trial court correctly applied Rule 56. See Hill v. Chattanooga, 533 S.W.2d 311, 312 (Tenn. Ct. App. 1975). The appellate court must make an entirely fresh determination because only questions of law are presented; no presumption of correctness accompanies the trial court's decision. See id.

## III.  Law and Analysis

The following two issues are presented for our review:

1. Whether the trial court erred by granting Dr. Bindra's motion for summary judgment and renewed motion for summary judgment on the ground that Dr. DePersio was not competent to testify as an expert witness; and
2. Whether the trial court erred by granting Dr. Bindra's motion for summary judgment and renewed motion for summary judgment on the ground that the Tilleys failed to establish adequate proof on the issue of causation.

We will examine each issue in turn.

The first issue presented for our review is whether the trial court erred by granting Dr. Bindra's motion for summary judgment and renewed motion for summary judgment on the ground that Dr. DePersio was not competent to testify as an expert witness. The trial court is vested with broad discretion when determining the "admissibility, qualifications, relevancy and competency of expert testimony." McDaniel v. CSX Transp., Inc., 955 S.W.2d 257, 263 (Tenn. 1997); see Mabon v. Jackson-Madison County General Hosp., 968 S.W.2d 826, 829 (Tenn. Ct. App. 1997) (citing Shelby County v. Barden, 527 S.W.2d 124, 131 (Tenn. 1975)). We will uphold a trial court's ruling in this regard except upon a showing of an abuse of discretion. See McDaniel, 955 S.W.2d at 263-264.

The plaintiff's burden of proof with respect to the elements of a medical malpractice claim is codified at section 29-26-115 of the Tennessee Code. Section 29-26-115 provides, in pertinent part:

> (a) In a malpractice action, the claimant shall have the burden of proving by evidence as provided by subsection (b):
> (1) The recognized standard of acceptable professional practice in the profession and the specialty thereof, if any, that the defendant practices in the community in which the defendant practices or in a similar community at the time the alleged injury or wrongful action occurred;
> (2) That the defendant acted with less than or failed to act with ordinary and reasonable care in accordance with such standard; and
> (3) As a proximate result of the defendant's negligent act or omission, the plaintiff suffered injuries which would not otherwise have occurred.
> (b) No person in a health care profession requiring licensure under the laws of this state shall be competent to testify in any court of law to establish the facts required to be established by subsection (a), unless the person was licensed to practice in the state or a contiguous bordering state a profession or specialty which would make the person's expert testimony relevant to the issues in the case and had practiced this profession or specialty in one (1) of these states during the year preceding the date that the alleged injury or wrongful act occurred.

TENN. CODE ANN. § 29-26-115 (Supp. 2001).

Section 29-26-115(a)(1) charges the plaintiff in a medical malpractice action with the burden of proving by expert witness testimony the standard of care in the community in which the defendant practices or a similar community. Under this "locality rule," the relevant standard of care is not a

nationwide or even a statewide standard of care.  Rather, the relevant standard of care is that of the community in which the defendant practices or a similar community.

Several cases in Tennessee have discussed the locality rule.  In Mabon v. Jackson-Madison County General Hosp., 968 S.W.2d 826 (Tenn. Ct. App. 1997), the plaintiff brought a medical malpractice claim against the defendant physician.  See id. at 827.  The defendant filed a motion for summary judgment supported by his own affidavit.  See id.  In opposition to the motion for summary judgment, the plaintiff filed the affidavit of Dr. Shane, a physician from Missouri.  See id. at 828.  Dr. Shane stated that he was familiar with the requisite standard of care in an area such as Jackson and that the defendant deviated from the requisite standard of care.  See id.  Dr. Shane testified by deposition that he had never been to Jackson and did not know the population of Jackson, how many hospitals or doctors were in Jackson, or what medical specialities were represented in Jackson.  See id. at 830-31.  He stated that there was a national standard of care for physicians and "if you had this case in New York city or San Francisco or Chicago or Memphis, Tennessee, or Jackson, they're all the same."  Id. at 828.  The trial court found that Dr. Shane was not qualified to testify as an expert witness pursuant to section 29-26-115 and granted summary judgment in favor of the defendant.  See id.  On appeal, this Court recognized that "[t]o qualify as an expert, a physician is not required to be familiar with all of the medical statistics of a particular community.  However, a complete lack of knowledge concerning a community's medical resources would be contrary to knowledge of the required standard of care."  Id. at 831 (internal citation omitted).  In affirming the trial court, this Court found that Dr. Shane failed to establish through his deposition testimony that he had knowledge of the requisite standard of care in Jackson.  See id.

In Spangler v. East Tennessee Baptist Hosp., No. E1999-01501-COA-R3-CV, 2000 WL 222543, *1 (Tenn. Ct. App. Feb. 28, 2000), the plaintiffs filed a medical malpractice claim against the defendants physicians.  See id.  The defendants filed a motion for summary judgment supported by their affidavits.  See id.  In opposition to the motion for summary judgment, the plaintiffs filed the affidavit of Dr. DiBianco, a physician from Washington, D.C.  See id.  Dr. DiBianco stated that the defendants had deviated from the requisite standard of care.  See id.  He stated that the medical standards which formed the basis of his opinion were "not standards which vary from community to community."  Id.  As a result, the trial court found that Dr. DiBianco was not qualified to testify as an expert witness pursuant to section 29-26-115 and granted the motion for summary judgment in favor of the defendants.  See id.  The plaintiffs filed a Rule 59 motion and the supplemental affidavit of Dr. DiBianco.  See id.  In his supplemental affidavit, Dr. DiBianco recited that he was "familiar with the recognized standard of acceptable professional practice for the defendant health care providers in the community in which the defendant health care providers practice or in a similar community."  Id.  The trial court deemed the supplemental affidavit legally insufficient and reaffirmed the grant of summary judgment.  See id.  The court of appeals found that the supplemental affidavit was conclusory and simply tracked the language of section 29-26-115.  See id.  The court of appeals found that because Dr. DiBianco's supplemental affidavit failed to provide a factual basis for his claimed knowledge of the standard of care in Jackson or a similar community, the trial court did not abuse its discretion.  See id. at *1-2.

In Roberts v. Bicknell, No. W2000-02514-COA-R3-CV, 2001 WL 935345, *1 (Tenn. Ct. App. Aug. 16, 2001), the plaintiffs filed a medical malpractice claim against the defendant physician. See id. The defendant filed a motion for summary judgment. See id. at *2. In opposition to the motion for summary judgment, the plaintiffs filed the affidavit of Dr. Armstrong. See id. at *6. Dr. Armstrong stated that he was familiar with the requisite standard of care in Jackson, Tennessee. See id. at *7. Subsequently, at his deposition, Dr. Armstrong testified that he had no knowledge of the practice of medicine in Jackson. See id. He stated that he had never been to Jackson and did not know the population of Jackson, the location of Jackson, how many hospitals were in Jackson, or the medical specialities represented in Jackson. See id. The trial court found that Dr. Armstrong was not competent to testify as to the requisite standard of care and granted the motion for summary judgment. See id. at *2. On appeal, this Court stated the following:

> [a]lthough this Court has "admonished lawyers to couch their medical experts' conclusions in the language of" the statute, we realize that "a mere ritualistic incantation of statutory buzz evidences very little." Rather, we must look at the expert's opinion to determine if it is based upon "trustworthy facts or data sufficient to provide some basis for the opinion. . . ."

Id. at *7 (quoting Church v. Perales, No. M1997-00227-COA-RS-CV, 2000 WL 1183074, at *13 (Tenn. Ct. App. Aug. 22, 2000)). This Court then stated that "[t]he law on expert witnesses, as it exists in Tennessee, requires the expert to have *some* knowledge of the practice of medicine in the community at issue or a similar community." Id. at *8. According to this Court, the requisite knowledge could be based upon information such as the size and location of a community, or the existence of teaching hospitals in the community. See id. This Court found that because Dr. Armstrong was unable to state any knowledge of facts or data about the Jackson medical community to base his opinion upon as to the requisite standard of care, the trial court did not abuse its discretion. See id.

In the case at bar, the Tilleys had the burden of proving by expert witness testimony the requisite standard of care for an otolaryngologist in Dyersburg or a similar community. The only expert witness proferred by the Tilleys to prove the standard of care for an otolaryngologist in the Dyersburg community or a similar community was Dr. DePersio. In his June 23, 2000 affidavit, Dr. DePersio stated that he was familiar with the standard of care required of an otolaryngologist practicing in Dyersburg or a similar community in December, 1998. Dr. DePersio stated, however, that Dr. Bindra failed to meet the requisite standard of care of an otolaryngologist in *the state of Tennessee*. During his December 7, 2000 deposition, Dr. DePersio admitted that he knew nothing about the practice of medicine in Dyersburg. Dr. DePersio testified that he had never been to Dyersburg and did not know how many hospitals were in Dyersburg, how many beds were in the Dyersburg hospital, or how many doctors or otolaryngologists practiced in Dyersburg. He stated that he wholly relied upon his assumption that there was a statewide standard of care in commenting on the standard of care in Dyersburg.

As in the Spangler case, the Tilleys then filed the supplemental affidavit of Dr. DePersio. In his supplemental affidavit, Dr. DePersio recited that he was familiar with the standard of care required of an otolaryngologist in Dyersburg or a similar community in December, 1998. Dr. DePersio stated that subsequent to his deposition, he had become aware of the following statistical information regarding the medical community of Dyersburg: the number of licensed beds at the Methodist Hospital of Dyersburg, the services and specialties offered by the hospital, the number and names of all physicians on the active medical staff of the hospital, and the population of Dyersburg and Dyer County. Dr. DePersio never stated with specificity, however, this statistical information. In other words, Dr. DePersio made the statement that he had learned such information without stating the actual information that he had learned. As stated in Roberts, we must look to whether Dr. DePersio's opinion as to the requisite standard of care was based upon trustworthy facts or data sufficient to provide a basis for his opinion. Because Dr. DePersio failed to state with specificity any facts or data that formed the basis for his opinion, we are unable to determine whether his statistical information was trustworthy or reliable. We find that Dr. DePersio's supplemental affidavit merely made a conclusory statement that he was familiar with the standard of care required of an otolaryngologist in Dyersburg or a similar community in December, 1998. Under the relevant case law, Dr. DePersio's supplemental affidavit was legally insufficient to prove the standard of care in a medical malpractice case; therefore, the trial court correctly determined that Dr. DePersio was not competent to testify as an expert witness. Because the Tilleys failed to satisfy their burden of proving by expert witness testimony the standard of care in the community in which the defendant practices or a similar community, we find that summary judgment was proper in this case. Accordingly, we affirm the trial court's grant of Dr. Bindra's motion for summary judgment and renewed motion for summary judgment.

The second issue presented for our review is whether the trial court erred by granting Dr. Bindra's motion for summary judgment and renewed motion for summary judgment on the ground that the Tilleys failed to establish adequate proof on the issue of causation. Because we affirmed the trial court's grant of summary judgment and renewed motion for summary judgment on the first issue, we decline to address the second issue.

### III. Conclusion

For the foregoing reasons, the decision of the trial court is affirmed. Costs of this appeal are taxed against the Appellants, Marlena and Fred Tilley, and their surety, for which execution may issue if necessary.

_____
ALAN E. HIGHERS, JUDGE