IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
December 11, 2001 Session

## MARY HENRY, ET AL. v. OBSTETRICS AND GYNECOLOGY CONSULTANTS, P.C., ET AL.

**Appeal from the Circuit Court for Knox County**
**No. 1-185-98    Dale C. Workman, Judge**

**FILED FEBRUARY 8, 2002**

**No. E2001-01246-COA-R3-CV**

---

Mary Henry and Travis Henry sue Obstetrics and Gynecology Consultants, P.C., and Jeffrey R. Dell, M.D., for medical malpractice which they contend resulted in the death of their daughter. The Trial Court excluded the testimony of the expert witness presented by the Henrys on the ground that he was not entitled to testify because he did not know the standard of care on the date of the alleged malpractice in Knoxville or a similar community. We affirm.

**Tenn.R.App.P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed;
Cause Remanded**

HOUSTON M. GODDARD, P.J., delivered the opinion of the court, in which WILLIAM H. INMAN, SR. J., joined. HERSCHEL P. FRANKS, J., filed a concurring opinion.

J. D. Lee and Dan C. Stanley, Knoxville, Tennessee, for the Appellants, Mary Henry and Travis Henry

James G. O'Kane, Knoxville, Tennessee, for the Appellees, Obstetrics and Gynecology Consultants, P.C., and Jeffrey R. Dell, M.D.

## OPINION

Mary Henry and Travis Henry, parents and next of kin of Elizabeth N. Henry, deceased, sue Obstetrics and Gynecology Consultants, P.C., and Jeffrey R. Dell, M.D., who practices medicine in Knoxville, for damages they allege were incurred as a result of his medical malpractice on March 24, 1997.

The Trial Court sustained the Defendants' renewed motion for summary judgment upon finding that the expert witness proffered by the Henrys, Dr. Joel S. Engel, who practices medicine in suburban Atlanta, Georgia, was not competent to testify as he did not meet the requirements set

out in T.C.A. 29-26-115, specifically sub-section (a)(1),[1] which is commonly known as the "Locality Rule."

The Henrys appeal contending the Trial Court was in error in this determination.

The entire proof on the point in contention is contained in the affidavits and the depositions of Dr. Engel, which is as follows:

<u>Affidavit of Dr. Engel, Dated March 17, 1999</u>

3.   I am familiar with the recognized standard of acceptable professional practice pertaining to the practice of obstetrics and gynecology as it existed in Knoxville, Tennessee in 1997.

4.    I am of the opinion, within a reasonable degree of medical certainty, that Jeffrey R. Dell, M.D. and Obstetrics and Gynecology Consultants, P.C., acted with less than or failed to act with ordinary and reasonable care in accordance with such standards in their treatment of Mary Henry and that such departures from the recognized standard of acceptable professional practice caused a different outcome and were the proximate cause of injuries sustained by Elizabeth N. Henry.

<u>Discovery Deposition of Dr. Engel Taken February 23, 2000</u>

Q.    Doctor, you state in your affidavit that you are familiar with the standard of care as practiced in Knoxville, Tennessee, in 1997. What is your basis for that statement?

A.   Well, my basis is my experience with reviewing records with my own medical practice, seeing that what I do and what is done in my community is no different from what is done in other communities, but for me, personally, I have reviewed over the last 20 years sufficient number of records in various communities in the state of Tennessee, and I have never found a community that practiced any differently than is practiced in my own city and state, so I see no differences.

---

[1]    **29-26-15.  Claimant's burden in malpractice action – Expert testimony – Presumption of negligence – Jury instructions. –** (a) In a malpractice action, the claimant shall have the burden of proving by evidence as provided by subsection (b):

(1) The recognized standard of acceptable professional practice in the profession and the specialty thereof, if any, that the defendant practices in the community in which the claimant practices or in a similar community at the time the alleged injury or wrongful action occurred.

Q. Do you thus, then, consider the practice, whether it is Atlanta or Knoxville or Memphis or Little Rock, Arkansas, or Detroit, Michigan, to be basically the same, that is a national standard of care?

A. There certainly is a national standard based upon the training and national organizations that establish standards; but more importantly, we are still dealing with the same woman whether she lives in Detroit or whether she lives in Knoxville or Nashville or Atlanta, and medical problems are basis. They don't vary from community to community, because patients – it is the same patients, so there is no difference.

Whether there are differences between medical care in the United States and Third World countries is another issue, but in the United States the practice of medicine does not vary from community to community.

Q. And that's the basis for your statement that you know that the standard of care in Knoxville is adequate in this case?

A. That's correct.

<u>Affidavit of Dr. Engel Dated April 25, 2001</u>

2. This affidavit is a supplement to my affidavit in the Mary F./Elizabeth N. Henry case submitted by me in March of 1998.

3. Even though I ceased practicing obstetrics in 1993 and have since limited my practice to infertility and general gynecology, I have continued to be familiar with the standard of care of physicians practicing obstetrics and gynecology in Atlanta and the Knoxville, Tennessee area as it was practiced in Knoxville, Tennessee in 1997.

4. I have been chosen by Tenn Care of Tennessee to review cases for them and have reviewed cases in communities of Tennessee on behalf of the Tenn Care organization.

5. The practice of obstetrics and gynecology is a board certification and my knowledge of the standard of care in Knoxville, Tennessee and other Tennessee communities is one of the reasons that the judicial review system of Tenn Care of Tennessee has employed me as an independent medical evaluator for their cases, and particularly in the specialty of gynecology and obstetrics.

<u>Deposition for Proof of Dr. Engel Taken April 25, 2001</u>
<u>Direct Examination</u>

-3-

Q. (By Mr. Lee) Now, have you an opinion within a reasonable degree of medical certainly whether or not you're familiar with the practice of obstetrics and gynecology as pertains to a community such as Knoxville, Tennessee, or a similar community back in 1996, 1997?

. . . .

Q. (By Mr. Lee) Let me go further, then, in lieu of that objection, and develop that some.

Dr. Engel, in the practice of obstetrics and gynecology, is that a board certification nationally?

A. It is, sir, yes.

Q. And does that entail both written and oral examination?

A. Yes, sir.

Q. When were you first board certified?

A. I took the written examinations during the last year of my residency, I think in May of 1972. And then you have to wait two years after leaving a residency before presenting oneself for oral examinations, and I did that in, I believe, November of '74, passed those examinations and was certified at that time.

. . . .

Q. Now, we were talking earlier about your familiarity with the practice of obstetrics and gynecology in Knoxville, Tennessee, or a similar community; are you familiar with Knoxville, Tennessee, as it relates to the community of Sandy Springs, Georgia?

. . . .

THE WITNESS: Well, I believe I am – I am familiar with the practice being similar to my own community.

. . . .

Q. All right. Following receipt of those records you have indicated you did an affidavit. Tell us, though before I get into that, have you had occasion to

-4-

– tell me more about how that you're familiar with the practice of obstetrics and gynecology in Knoxville, Tennessee, in 1996, 1997?

. . . .

Q. (By Mr. Lee) Have you had occasion in your career, Dr. Engel, to be contacted with the organization in Tennessee known as TennCare?

. . . .

THE WITNESS: Yes, sir.

Q. (By Mr. Lee) What is TennCare of Tennessee?

A. Apparently TennCare is the agency that regulates medical care to those patients who apparently are indigent, apparently something akin to Medicaid in Georgia.

The states – each state is responsible for medical care, and TennCare is the Tennessee agency that is involved in regulating, establishing those standards of reimbursement and what have you for physicians as well as hospitals and other health care workers within the State of Tennessee.

Q. And is there such a thing as a judicial review of the TennCare system in which doctors such as yourself are involved?

A. I am only familiar with the two states, Georgia and Tennessee. There apparently are provisions under the law in Tennessee that when patients or physician or hospitals are denied some aspect of medical care, whether it's surgical care or medication, there is an appeal process whereby patients' medical care that is requested is reviewed by multiple physicians within the State of Tennessee, but ultimately a patient has a right to what is called some sort of judicial review whereby there is a judge that has a hearing. I believe most of this is done via conference calls.

The state then, in order to find an unbiased party as an expert, seeks physicians outside the State of Tennessee to review those cases. And I act as the expert representing TennCare. This is done over the phone.

I am sent all of the records to evaluate. I then listen while the process goes on, that is the attorney for the state TennCare presents their case, that is, their reason why a patient is denied a specific service, the patient then has the right to bring in his or her own experts and attorney.

And after listening to that, then I am – as in a court of law, I am asked to provide an opinion about the case.

I have been doing this for somewhere between a year-and-a-half and two years. As I see my role, while I may in a sense be employed by TennCare to do this service, I not infrequently find that the structure of the law is such that the TennCare system may not truly be sensitive to the needs of the patients in the state, and many times I may side with the patients' side in terms of the denial of care because while it may not be strictly written n the guidelines for TennCare, there also is something called the right thing to do , and so I find myself on both sides of the issue.

But I believe that's the essence of the process, that is, TennCare wants an unbiased expert, one who has no conflict of interest either with the patient or any health care provider in the state.

And so I have continued to be able to do that for the TennCare. The frequency with which that happens, I think, is probably about once a month there is such a hearing.

I also – the recent organization that contracts under TennCare called the American Care Foundation Incorporated, an organization out of Mobile, Alabama, that sends me each day by fax medical records and asks me to review authorizations for hospital stays as well as requests for surgical procedures and medical treatment for physicians in hospitals in the Southeast area.

I have reviewed records for – in cases in Tennessee and in Alabama as well as Georgia for this American Care – Health Care Foundation, I think it's called, I think they have the contract with TennCare for these judicial hearings. And that's how I am involved.

. . . .

Q.    (By Mr. Lee) Before the hearing that you mentioned is done by conference call with different ones participating, are you furnished the records in the specialty of obstetrics and gynecology before the hearing – on the patients before the hearing?

A.    I am, sir.

Q.  Must you be familiar, or is it required you be familiar with the practice and the standard of care of obstetrics and gynecology in those cases such as that

that you're talking about, or that you're asked to appear as independent medical evaluator?

A. Yes.

. . . .

Q. (By Mr. Lee) Now, Dr. Engel, in addition to doing work for TennCare of Tennessee, have you been asked by myself and other attorneys to review records and appear as an expert witness in a case in your specialty?

A. I have, sir.

Q. How long a period of time have you performed that service?

A. I have been reviewing records since the early 1980's for cases in Tennessee as well as other contiguous Southeastern states and on occasion states outside this region.

Q. And have you had occasion to be qualified in state courts in Tennessee in your specialty of obstetrics and gynecology?

. . . .

THE WITNESS: I believe I have sir.

Q. (By Mr. Lee) And have you been qualified in federal courts in Tennessee to do the same service?

. . . .

THE WITNESS: I don't know. I have never differentiated between whether the cases were state court cases.

Q. (By Mr. Lee) Okay.

A. Or Federal. But I would think probably not in Federal court.

Q. Okay. Now, on the TennCare review that you've done for TennCare, Tennessee, has that ever involved patients from Knoxville, Tennessee?

. . . .

THE WITNESS: I am sure it has.

-7-

CROSS-EXAMINATION

Q.   As you have previously told us you have practiced exclusively in the Atlanta metropolitan area since 1972; is that correct?

A.   Well, I would say suburban Atlanta area, yes, sir.

Q.   Wouldn't you agree we are in the Atlanta metropolitan area, Fulton County, as we are sitting here taking this deposition?

A.   No.  North Fulton County is not considered metropolitan Atlanta.

Q.   Are we within a stone's throw of Interstate 285, the interstate that encircles Atlanta, Georgia?

A.   Yes.  The city limits are some several miles south of 285 at this north point.

Q.   And we are in Fulton County, and Atlanta, Georgia, is in Fulton County?

A.   We are in north Fulton County.

Q.   All right.  But Atlanta, Georgia, also is in Fulton County?

A.   In Fulton County, yes.

Q.   And the Atlanta metropolitan area has a population of approximately four million; is that right, sir?

A.   It does.

. . . .

Q.   You don't know any obstetricians in Tennessee; is that correct?

A.   That's correct.

Q.   You've never practiced medicine in Tennessee?

A.   I have not.

Q.   You have never been to Knoxville?

A.  I have not.

Q.  You haven't discussed this case with any medical professional, that is, doctor or nurse; is that correct?

A.  I have not.

Q.  And you haven't reviewed any medical literature associated with this case; is that correct?

A.  That's correct.

Q.  When you were practicing obstetrics you were what is known as a general obstetrician; is that correct?

A.  That's correct.

Q.  There are obstetricians who subspecialize in high risk obstetrics and they are what is known as maternal fetal medicine specialists; is that right?

A.  Yes, sir.

Q.  And you are not that specialty; is that correct?

A.  I am not.  The maternal and fetal medicine specialty was organized after I finished my training.

Q.  Dr. Stevens, the physician who saw Mrs. Henry on March 24, 1997 at the Ft. Sanders perinatal center, he's one of those subspecialists in maternal fetal medicine; is that right?

A.  Yes, sir.

Q.  And this primarily take care of high risk obstetrical patients?

A.  Well, it depends upon how they practice, they may function as consultants to general obstetricians, or they may actually be delivering normal as well as high risk patients.

Q.  But they are a category of obstetricians who subspecialize in the area of high risk obstetrics?

A.  Yes.

-9-

Q. Now, in your opinion and with regard to obstetrics there is a national standard of care; is that correct?

A. For training there is, yes.

Q. Okay. And it also is your opinion that there is a difference between obstetrical care in the U.S. as compared to, say, third world countries, but in the United States the practice of medicine does not vary from community to community; is that correct?

A. There is probably some truth to that.

Q. And that's the basis for your testimony in this case with respect to the standard of care as practiced in Knoxville, Tennessee?

A. Yes, sir. In addition to what I previously stated today about my familiarity with the care that's provided in Knoxville.

Our standard of review of a trial court's determination is restated in Staples v. CBL & Associates 15 S.W.3d 83, 89 (Tenn. 2000), as follows:

> The standards governing the assessment of evidence in the summary judgment context are also well established. Courts must view the evidence in the light most favorable to the nonmoving party and must also draw all reasonable inferences in the nonmoving party's favor. *See Robinson v. Omer*, 952 S.W.2d at 426; *Byrd v. Hall*, 847 S.W.2d at 210-11. Courts should grant a summary judgment only when both the facts and the inferences to be drawn from the facts permit a reasonable person to reach only one conclusion. *See McCall v. Wilder*, 913 S.W.2d 150, 153 (Tenn.1995); *Carvell v. Bottoms*, 900 S.W.2d 23, 26 (Tenn.1995).

However, notwithstanding the foregoing authority, our case law holds that even when dealing with a motion for summary judgment the trial court retains the authority to exclude an expert's testimony. The appellate standard of reviewing its determination is abuse of discretion. Mabon v. Jackson-Madison County General Hospital, 968 S.W.2d 826 (Tenn. Ct. App. 1997).

Our case law also holds that as to the testimony of an expert doctor that there is a national standard for any particular medical discipline, and that he is familiar with the national standard without more does not meet the requirement of the statute. Mabon v. Jackson-Madison County General Hospital, supra; Robinson v. Lecorps, an unreported opinion of this Court filed in Nashville September 25, 2001 (2001 WL 1117067).

The testimony of Dr. Engel relative to his experience in evaluating TennCare cases has a significant deficiency because he did not begin making the TennCare reviews until almost two years after the alleged malpractice. This testimony does not meet the language of the statute requiring

knowledge at the time of the alleged malpractice. In reaching our determination we have not overlooked the testimony of the expert that he had reviewed records in Tennessee cases "since the early 1980's." He does not, however, testify that any of those cases involved Knoxville or a similar community.

We accordingly find that the Trial Court did not abuse its discretion in rejecting the testimony of Dr. Engel.

For the foregoing reasons the judgment of the Trial Court is affirmed and the cause remanded for collection of costs below. Costs of appeal are adjudged against Mary and Travis Henry and their surety.

_____
HOUSTON M. GODDARD, PRESIDING JUDGE