IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
July 27, 2010 Session

## TINA JOHNSON, ET AL. v. DAVID J. RICHARDSON, M.D.

**Direct Appeal from the Circuit Court for Shelby County**
**No. CT-003760-01   Karen R. Williams, Judge**

---

**No. W2009-02626-COA-R3-CV  - Filed August 12, 2010**

---

This is a medical malpractice case.  Plaintiff/Appellant appeals from the trial court's disqualification of her expert witness and grant of the Defendant/Appellee's motion for directed verdict.  Finding that the Appellant failed to show that her expert was familiar with the standard of care in a community similar to the defendant's community, we affirm the decision of the trial court.

**Tenn. R. App. P. 3. Appeal as of Right; Judgment of the Circuit Court Affirmed**

J. STEVEN STAFFORD, J., delivered the opinion of the Court, in which DAVID R. FARMER, J., joined and HOLLY M. KIRBY, J., filed a concurring opinion.

Al H. Thomas and Kenneth R. Besser, Memphis, Tennessee, for the appellants, Tina Johnson, Regina Salinas and Jennifer Norton o/b/o Mary A. French.

Joseph M. Clark and Michael E. Keeney, Memphis, Tennessee, for the appellee, David J. Richardson, M.D.

### OPINION

This case began on June 19, 2001 when the Appellant, Mary A. French ("Ms. French") filed her complaint against the Appellee, David J. Richardson, M.D. ("Dr. Richardson").[1]  Ms. French alleged that Dr. Richardson was negligent in treating her in the

---

[1]Ms. French also named other parties as defendants to this lawsuit.  However, those defendants were
(continued...)

Emergency Room of Baptist Memorial Hospital East in Memphis, Tennessee on December 8, 1999.[2] Thereafter, litigation ensued. The deposition of Charles W. Sheppard, M.D. ("Dr. Sheppard"), Ms. French's expert, was taken on February 22, 2006.[3] Dr. Shepard practices emergency medicine in Springfield, Missouri.

The trial in this case began in November 2009. During the trial, Ms. French played the video-taped deposition of Dr. Sheppard to the jury. At some point thereafter, Dr. Richardson objected to Dr. Sheppard's qualifications as an expert and moved for a directed verdict.[4] The parties argued and briefed the issue. On December 3, 2009, after hearing argument and considering the law, the trial court held that Ms. French had not shown that Dr. Sheppard was familiar with the standard of care in Memphis or a similar community. As stated in its order, the trial court found that while Dr. Shepard "testified regarding various facts about Memphis, he generally failed to show how Springfield was similar." Further, the trial court found that "[w]ith respect to some of the facts, Dr. Sheppard's testimony was questionable." Because Ms. French had not met her burden in showing the communities were similar, the trial court disqualified Dr. Sheppard as an expert. The trial court then granted Dr. Richardson's motion for a directed verdict as Ms. French lacked expert proof. On December 7, 2009, the trial court entered an order reflecting these decisions.

Ms. French filed a notice of appeal on December 4, 2009.[5] From Ms. French's brief,

---

[1](...continued)
subsequently dismissed and are not subject to this appeal. Further, during the course of the proceedings in the trial court, Ms. French passed away and her daughters were substituted as plaintiffs on behalf of their mother. For purposes of clarity, we will continue to refer to Ms. French as the Plaintiff/Appellant.

[2] We note that the record shows that the complaint was filed on June 19, 2001. Ms. French's brief asserts that the complaint was filed originally on April 5, 2000. Neither party disputes these dates, nor explains the discrepancies. We are limited to the record before us. Less than the full record was designated on appeal by consent of the parties pursuant to Tenn. R. App. P. 24.

[3]The transcript of this deposition indicates that a discovery deposition was taken prior to the February 2006 deposition.

[4]It is not clear from the record at what point during the trial Dr. Richardson moved to disqualify Dr. Sheppard and moved for directed verdict. According to Ms. French's brief, Dr. Richardson so moved at the conclusion of the viewing of the video-taped deposition. According to Dr. Richardson's brief, he moved at the conclusion of Ms. French's proof. Neither party disputes the other's assertion. These may be one and the same, but this Court cannot determine that from the contents of the record.

[5]We note that the notice of appeal was filed early. However, Tenn. R. App. P. 4(d) provides that "[a] prematurely filed notice of appeal shall be treated as filed after the entry of the judgment from which the
(continued...)

we surmise two issues that she submits for our review: (1) whether the trial court erred in disqualifying Dr. Sheppard, and (2) whether the trial court erred in granting Dr. Richardson's motion for a directed verdict.

**Analysis**

The trial court has broad discretion in determining the "admissibility, qualifications, relevancy and competency of expert testimony." ***McDaniel v. CSX Transp., Inc.***, 955 S.W.2d 257, 263 (Tenn. 1997). We review a trial court's decision regarding expert witness competency and qualifications under an abuse of discretion standard. ***Taylor ex rel. Gneiwek v. Jackson-Madison County Gen. Hosp. Dist.***, 231 S.W.3d 361, 371 (Tenn. Ct. App. 2006). A trial court abuses its discretion when it has applied an incorrect legal standard or has reached a decision which is against logic or reasoning that caused an injustice to the party complaining. ***Eldridge v. Eldridge***, 42 S.W.3d 82, 85 (Tenn. 2001). The trial court's decision "will be upheld so long as reasonable minds can disagree as to the propriety of the decision." ***State v. Scott***, 33 S.W.3d 746, 752 (Tenn. 2000).

The requirements to establish a claim for medical malpractice are found in Tenn. Code Ann. § 29-26-115(a), which provides:

> (a) In a malpractice action, the claimant shall have the burden of proving by evidence as provided by subsection (b):
>
> (1) The recognized standard of acceptable professional practice in the profession and the specialty thereof, if any, that the defendant practices in the community in which the defendant practices or in a similar community at the time the alleged injury or wrongful action occurred;
>
> (2) That the defendant acted with less than or failed to act with ordinary and reasonable care in accordance with such standard; and
>
> (3) As a proximate result of the defendant's negligent act or omission, the plaintiff suffered injuries which would not otherwise have occurred.

---

[5](...continued)
appeal is taken and on the day thereof."

This statute requires proof of the standard of care in the community in which the defendant practiced at the time of the injury or proof of the standard of care in a similar community. This is known as the locality rule. ***Robinson v. LeCorps***, 83 S.W. 3d 718, 723 (Tenn. 2002). Pursuant to Tenn. Code Ann. § 29-26-115(b) the standard of care must be proven through expert testimony.[6]   There are two ways to meet this requirement.  First, the expert may demonstrate that he is familiar with the standard of care of the defendant's community at the time of the alleged injury.  Second, the expert may demonstrate that he is familiar with the standard of care of a community similar to the defendant's community.  If the plaintiff is attempting to prove the standard of care under the second option, that is, that the expert is familiar with the standard of care in a similar community, the similar community, must be "*shown to be similar* to the defendant's community." ***Id.*** at 724 (emphasis original); *see also* ***Mabon v. Jackson-Madison County General Hosp***., 968 S.W.2d 826, 831 (Tenn. Ct. App. 1997)(" A plaintiff who chooses to prove the standard of care in a similar community must prove that community is similar to the one in which the defendant practices.")


"Establishing the similarities in communities is as much a part of the burden of proof under the locality rule as is establishing that the witness practices in a contiguous state." ***Carpenter v. Klepper***, 205 S.W.3d 474, 483 (Tenn. Ct. App. 2006)(citing ***Bravo v. Sumner Reg'l Health Sys., Inc***., 148 S.W.3d 357, 368-69 (Tenn. Ct. App. 2003)). This burden may be met by comparing factors between the similar community and the community where the alleged malpractice occurred; such as the populations of the communities, the proximity to a teaching hospital, medical facilities, medical specialities, and the literature and training available. *See* ***Taylor ex rel. Gneiwek v. Jackson-Madison County General Hosp. Dist. et al***, 231 S.W.3d 361, 369-71 (Tenn. Ct. App. 2006); ***Travis v. Ferraraccio et al***, No. M2003-00916-COA-CV, 2005 WL 2277589, at *11 (Tenn. Ct. App. Sept. 19, 2005)(citations omitted); ***Grisham v. McLaughlin***, No. M2008-00393-COA-R3-CV, 2009 WL 275667, at *3 (Tenn. Ct. App. Feb 4, 2009).  The expert must "'connect the dots' between the standard in that community and the community where the alleged malpractice occurred." ***Farley v. Oak Ridge Medical Imaging, P.C.***, No. E2008-01731-COA-R3-CV, 2009 WL 2474742, at *11 (Tenn. Ct. App. Aug. 13, 2009).  The expert need not know all of the medical statistics about a particular community. ***Taylor***, 231 S.W.3d at 366.  However, the expert may not simply make vague assertions about similarities between the communities. ***Grisham***, 2009 WL 275667 at *3 (holding that the expert did not meet the locality requirement when he

---

[6]There is an exception to the requirement for expert proof when the "alleged acts of negligence are so obvious that they come within the common knowledge of laymen." ***Kennedy v. Holder***, 1 S.W.3d 670, 672 (Tenn. Ct. App. 1999).  However, in this case, no one has alleged nor do we find that this exception is applicable.

stated that Nashville and Cape Girardeau were similar communities and supported his assertion by testifying that both communities have numerous physicians who practice in orthopedics and orthopedic surgery- the speciality at issue, both have multiple hospitals, and both have specialists in all major fields of medicine).

In this case, the expert, Dr. Sheppard, testified that he was an emergency room doctor at St. John's Regional Hospital in Springfield, Missouri. He testified that he was licensed in Missouri, California, Massachusetts, Ohio, and New York. He further testified about St. John's Hospital, explaining that it was a seven hundred bed hospital, which provides community tertiary care and treats about seventy-five thousand patients a year. In testifying about his familiarity with the standard of care, Dr Sheppard testified as follows:

> Q (Ms. French's counsel): In your opinion, are you familiar with the standard of care for emergency room physicians and emergency room personnel of a hospital in treating a patient such as Ms. French when she presented in November and December of 1999 and for the year preceding that time in 1998 in Memphis, Tennessee, or, or in a similar medical community?

> A (Dr. Sheppard): Yes, sir.

> Q: Have you ever practiced in Memphis?

> A: No, sir.

> Q: In what city are you familiar with the standard of care that, in your opinion, is similar to the medical community of Memphis?

> A: Springfield is a, I think, a very similar medical community to Memphis.

> Q: Well, tell us what you know about the medical community of Memphis.

A: Well. Memphis is a pretty decent medical center. It's got St. Jude's Hospital, which of course, is famous, and we send patients there all the time and get patients back from there all the time. It's got two big hospitals, the Baptist and The Med. It's a - - it's got the university medical school there, and is fairly well-known teaching center. It's got a big trauma center; it's got a burn center much like Springfield. I mean, we have the same sort of medical specialties, the same sort of stuff that's in Springfield. Baptist and The Med are both like St. John's in that we've got - - both of us have off campus - - what I call off campus; that is, we've got St. John's and then we've got multiple outlying hospitals. Ours are a little further out than - - than Memphis, and we've got them as far away as Lebanon, but - - but similar kind of design as to - - the health care system.

Q: Doctor, have you had occasions to see records from Memphis hospital and doctors' offices?

A: Yes. Sir. I've reviewed multiple cases from Memphis and from Tennessee. And, of course, that's another good way to see what kind of care is done in a community, and it - - I mean, it - - again, it's very similar to the sorts of things that we do here.

Q: Well, are all the medical specialties done in the various hospitals and clinics here in Springfield?

A: Yes. The only thing we don't have in Springfield is a transplant service.

Q: What's the population of Springfield?

A: It's about 800,000.

Q: Is that the city proper or - -

-6-

A: Yeah, that's the city - - that's the city proper.  Our - - our drawing area, again, much like Memphis, we pull from all the surrounding area.  We probably pull from a population of close to two million.

On cross examination, Dr. Sheppard admitted that he had never practiced in Tennessee, had never been to a hospital in Tennessee; never treated, examined or prescribed medicine for a patient in Tennessee; and does not know any doctors in Tennessee.  Further, upon moving to disqualify, Dr. Richardson provided the trial court with United States census records which showed that in 1999 Springfield's population was 42,669 while in Memphis the population was 606,109; and in 2006 Springfield's population was 153,449, while the population of Memphis was 676,548.

Dr. Sheppard did not assert that he was familiar with the standard of care in Memphis, the defendant's community.  Accordingly, we will review the record to determine if Dr. Sheppard demonstrated (1) that he was familiar with the standard of care in a community similar to the defendant's community, Memphis; and (2) that the two communities were similar.

After thoroughly reviewing the record, we find that Ms. French has not demonstrated that the trial court abused its discretion in disqualifying Dr. Sheppard as an expert.  While Dr. Sheppard did present information about the medical community in Memphis, he failed to sufficiently compare Memphis to the community in which he was familiar, Springfield. The only comparisons Dr. Sheppard provided to the trial court were the population of the two communities, that both had the same medical specialities, and that both had outlying hospitals. As to population, it was demonstrated that Dr. Sheppard was simply incorrect and that the population of the two communities was anything but similar.  Moreover, Dr. Sheppard's statement that both communities have the same medical specialities is even more vague than the testimony held to be vague and therefore insufficient in *Grisham*.  In *Grisham*, the expert at issue testified that both communities had orthopedic and orthopedic surgery specialists and the malpractice alleged was related to a knee replacement. *Grisham*, 2009 WL 275667 at *3.   In this case, Dr. Sheppard did not attempt to relate the medical specialities available in the communities to this case, but simply made the vague assertion that both had the same medical specialities. Finally, the mere fact that both communities had outlying hospitals is insufficient on its own to establish that the two communities were similar.

In her brief, Ms. French asserts that Dr. Sheppard provided the same explanation for his familiarity with a similar community as did Dr. Uhrig, the expert at issue in *Stovall v. Clarke*, 113 S.W.3d 715 (Tenn. 2003), which was held to be sufficient by the Tennessee Supreme Court. We disagree. There are numerous differences between this case and *Stovall*. First, and most importantly, in *Stovall*, Dr. Uhrig testified that he was familiar with the standard of care in the defendant's community. *Id.* at 718. Unlike Dr. Sheppard, he was not asserting that he was familiar with the standard of care in a similar community and attempting to demonstrate how the two communities were similar. Second, contrary to Ms. French's assertion, in *Stovall*, Dr. Uhrig did more than simply review several medical records. *Id.* at 718-19. Dr. Uhrig provided the *Stovall* court with a supplemental affidavit in which he explained that he often treats patients referred from the defendant's community for cardiology problems, which was the area of medicine at issue. *Id.* Dr. Uhrig also testified that in addition to reviewing over twenty medical charts, that he had testified in three medical malpractice cases in middle Tennessee and had reviewed other information about the defendant's community, including a statement by the hospital's CEO, population information for the defendant's community, a list of the medical specialties available in the defendant's community, the number of beds in the defendant's hospital, the number of doctors on staff, and other statistical data about the defendant's hospital and community. *Id.* at 718-19, n.2. Based on all of this combined information, the Supreme Court found that Dr. Uhrig demonstrated that he was familiar with the local standard of care. *Id.* at 723. Accordingly, Ms. French's assertion that the Supreme Court allowed the expert's testimony based upon the fact that the expert merely reviewed twenty medical records from Tennessee is not correct. Third, in *Stovall*, Dr. Uhrig explained in detail the medical records reviewed and the knowledge gained. Dr. Uhrig explained that he reviewed over twenty medical records from Tennessee and that his review of "'medical records and depositions'" demonstrated that the defendant's deviated from the standard of care. *Id.* at 718. To the contrary in this case, Dr. Sheppard, merely stated that he had reviewed "multiple" medical records from Tennessee. He did not offer any explanation as to the number of medical records, the content of the medical records, or the information he gained from reviewing the medical records. Moreover, as noted by the Supreme Court, the issue in *Stovall* revolved around whether the plaintiff's expert had presented sufficient information to overcome the defendant's motion for summary judgment. *Id.* at 723. At that stage, the plaintiff need only create a question of material fact and once done, has the opportunity at trial to meet his burden of proof under Tenn. Code Ann. §29-26-115. *Id.* However, in this case, we are not examining a motion for summary judgment, but reviewing Ms. French's evidence presented at trial. For the foregoing reasons, we do not find the situation in *Stovall* to be similar to this case.

Ms. French also asserts, relying on *Travis v. Ferraraccio*, No. M2003-00916-COA-

R3-CV, 2005 WL 2277589 (Tenn. Ct. App. Sept. 19, 2005), that the trial court impermissibly invaded the province of the trier of fact by making the determination that Dr. Sheppard failed to demonstrate that the two communities were similar, as the question of whether the two communities are similar is a question of fact for the jury. We disagree. In **Travis**, this Court reviewed the trial court's findings that neither of the plaintiff's experts had demonstrated the community in which they were familiar with the standard of care was similar to the defendant's community. **Id.** In **Travis**, the trial court was ruling on the defendant's motion for summary judgment, and after disqualifying both of the plaintiff's experts, the trial court granted the motion for summary judgment. **Id.** at 2-3.

In **Travis**, we reviewed the disqualification of the two experts separately. **Id.** at *6. At his deposition, the first expert in **Travis**, could not explain his assertion that he believed certain communities were similar to the defendant's community. **Id.** at *7. After the trial court granted summary judgment, the plaintiff in **Travis** filed a motion to alter or amend and attached an affidavit from the first expert. **Id.** This affidavit stated that based upon demographic data of Dalton, Georgia, the expert had concluded that Dalton was similar to the defendant's community. **Id.** at *8. However, the affidavit did not state that the expert applied the standard of care of Dalton when reviewing that case. **Id.** We upheld the exclusion of the first expert at issue, finding that the trial court did not err in determining that the first expert's testimony was inadmissible. **Id.** at *8.

After reviewing the second expert's affidavit, we reversed the trial court's exclusion of the expert. **Id.** *9-12. At his deposition, the second expert testified to a national standard of care and further stated that there was only one community, other than Kansas City, Missouri, with which he was familiar with the standard of care, that being Clinton, Missouri. **Id.** at *9. In response to the defendant's motion for summary judgment, the plaintiff provided an affidavit from the second expert. This affidavit asserted that the expert was also familiar with the standard of care of St. Joseph, Missouri, which he asserted was similar to the defendant's community. **Id.** at *10. After the trial court granted summary judgment, the plaintiff filed a second affidavit from the expert attempting to bolster his assertion that the communities were similar. **Id.** The expert stated that he had received referrals from St. Joseph, had attended medical seminars and meetings where the standard of care in St. Joseph was discussed, and attached two exhibits with demographic data to support his assertion. **Id.** at *11. The first exhibit provided population information for the defendant's community in 1996, along with information about the medical community including the number of hospitals, beds, and physicians. **Id.** at n.11. The second exhibit provided information for St. Joseph, including its population in 2000, its location with respect to major metropolitan areas, community resources, the number of hospitals, physicians, and other medical professionals, and described the specialty practices and resources at the hospital. **Id.** The

trial court excluded the second expert for two reasons: (1) the expert admitted that he was not familiar with the standard of care in the defendant's community; and (2) because the data upon which he relied to show the communities were similar was from 2000, rather than 1996 when the alleged malpractice occurred, and therefore his testimony was "inherently unreliable." *Id.* at *10. This court held that the first reason provided by the trial court was error as Tenn. Code. Ann. §29-26-115(a)(1) allowed the expert to be familiar with the standard of care in a community shown to be similar to the defendants. *Id.* at *11. This court also held that the second reason was error. *Id.* at *12. As stated by this Court, "the small temporal difference between the statistics for [the defendant's community] and the statistics for St. Joseph does not represent the sort of 'analytical gap' that would justify the exclusion of [the expert's] testimony at the stage of the process where the trial court is determining admissibility alone." *Id.* (citations omitted). Further, this Court held that the expert had "connected the dots" between the two communities and that the "temporal differences" only tested the weight and credibility to be given to the testimony, which decision rested with the trier of fact. *Id.* Accordingly, we reversed the trial court's exclusion of the second expert and its grant of summary judgment.

Contrary to Ms. French's assertion, we did not hold in *Travis* that the decision of whether the plaintiff had proven the similarity of the communities compared by the expert lies solely with the trier of fact. As explicitly stated in *Travis*, the trial court must first determine whether the expert testimony is admissible, which like all other evidentiary decisions, rests within the discretion of the trial judge. *Id.* at 5-6.

> In order for an expert opinion to be admissible in a medical malpractice case, the person offering the opinion must, like any other expert, demonstrate that he or she is qualified to render an opinion and that his or her opinion will substantially assist the trier of fact. In addition to these general requirements, a person offering an expert opinion in a medical malpractice case must demonstrate that he or she satisfies certain geographic and durational residency requirements and that he or she practices in a profession or specialty that makes the expert's opinion relevant to the issues in the case.

*Id.* at *13-14. After the trial court determines that the testimony is admissible, the weight and credibility to be given to the testimony lies with the trier of fact. *Id.* at *5.

In this case, the trial court properly found that Dr. Sheppard's testimony was

inadmissible. As discussed above, unlike the second expert in *Travis*, Dr. Sheppard's testimony contained an "analytical gap" and was devoid of anything "connecting the dots" between Memphis and Springfield. Consequently, there was not anything from which the jury could weigh the evidence and find that the two communities were similar. Therefore, the trial court properly acted as a "gatekeeper" and excluded Dr. Sheppard's testimony.

Ms. French also points out in her brief that Dr. Sheppard testified to a "universal standard" of care. However, any assertion that proof of a "universal" or even national or statewide standard of care would be sufficient under Tenn. Code Ann. § 29-26-115 is without merit. *Allen v. Methodist Healthcare Memphis Hosps*., 237 S.W.3d 296 (Tenn. Ct. App. 2007). Our Supreme Court has consistently held, while urging legislative change, that proof of a national standard of care is insufficient. *See e.g. Robinson*, 83 S.W.3d at 723-24.[7] We note that in *Stovall,* the expert did testify to a national standard of care. However, as explained by our Supreme Court, the expert explained his familiarity with the "locality rule" and testified that he applied the locality standard and not a national standard. *Stovall*, 113 S.W.3d at 723. Consequently, any testimony by Dr. Sheppard as to a national or "universal" standard of care is of no consequence.

Dr. Sheppard failed to establish that the standard of care of the community which he was familiar with, Springfield, Missouri, was similar to Memphis, the defendant's community. Consequently, we cannot find that the trial court abused its discretion in disqualifying Dr. Sheppard as an expert witness.

Ms. French also contends that the trial court erred in granting Dr. Richardson's motion for a directed verdict. We disagree. A trial court's decision to grant a motion for directed verdict involves a question of law. *Underwood v. HCA Health Servs. of Tennessee*, Inc., 892 S.W.2d 423, 425 (Tenn. Ct. App. 1994). A trial court may only grant a motion for directed verdict upon finding that reasonable minds can only reach one conclusion. *Gatson v. Tenn. Farmers Mut. Ins. Co.*, 120 S.W.3d 815, 819 (Tenn. 2003). On appeal, we apply the same standard used by the trial court when ruling on the motion initially. *United Brake Sys., Inc. v. Am. Envtl. Prot., Inc*., 963 S.W.2d 749, 754 (Tenn. Ct. App. 1997).

As discussed above, Ms. French was required to present expert testimony establishing the standard of care in the defendant's community or a similar community. Tenn. Code Ann. § 29-26-115(a)(1). When the trial court disqualified Dr. Sheppard, Ms. French was left with

---

[7]In *Robinson*, our Supreme Court upheld the rule that a national standard of care was insufficient under the statute. However, the *Robinson* court, followed its previous opinions and noted that there may be a "modern trend" towards a national standard of care, but explained that the statutory language does not support such an interpretation. *Robinson*, 83 S.W.3d at 723-24.

no expert, and therefore would not be able to establish a claim for medical malpractice. Finding that Ms. French lacked expert proof, the trial court granted Dr. Richardson's motion for directed verdict.

Ms. French submits that this was error in part because the deposition of Dr. Sheppard was taken approximately three years prior, and Dr. Richardson's motion was a "last minute 'Hail Mary' motion." Whether Dr. Richardson delayed in challenging Dr. Sheppard, is irrelevant to the trial court's decision on the motion for a directed verdict. We have not been presented with a scheduling order that required Dr. Richardson to challenge the qualifications of Dr. Sheppard pretrial. We also have not been cited to any legal authority that would require Dr. Richardson to challenge Dr. Sheppard's qualifications prior to his testimony at trial. Further, we have been provided with only a portion of the trial transcript and are unable to determine at what point during the trial Dr. Richardson challenged Dr. Sheppard's qualifications.[8] The trial court had no option but to grant a directed verdict, as Ms. French had failed to meet the requirements of Tenn. Code Ann. § 29-26-115 and therefore would not be able to establish a claim for medical malpractice. Therefore, we find that the trial court did not err in granting Dr. Richardson's motion for directed verdict.

For the foregoing reasons, we affirm the decision of the trial court. Costs of this appeal are taxed to the Appellants, Tina Johnson, Regina Salinas and Jennifer Norton o/b/o Mary A. French, and their surety.

_____
J. STEVEN STAFFORD, JUDGE

---

[8]Pursuant to Tenn. R. App. P. 24(a), the Appellant requested that less than the full record be submitted in this appeal. In accordance with the Rules of Appellate Procedure, the Appellant listed the parts of the record she believed necessary to convey a "fair, accurate and complete account of what transpired" in the trial court. Tenn. R. App. P. 24(a). The Appellee consented to the Appellant's request to submit less than the full record. All of the items provided in the Appellant's Rule 24 notice were submitted in the record to this Court.