IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
March 23, 2011 Session

## VIVIAN KENNARD v. ARTHUR M. TOWNSEND, IV, M.D., ET AL.

**Direct Appeal from the Circuit Court for Shelby County**
**No.  CT-000267-07      Robert L. Childers, Judge**

_____

**No. W2010-00461-COA-R3-CV  -  Filed April 14, 2011**

_____

This is a medical malpractice case.  The trial court granted summary judgment in favor of Appellee healthcare provider after its determination that Appellant patient's medical expert did not meet the locality requirement, Tennessee Code Annotated Section 29-26-115(a)(1). Discerning no error, we affirm and remand.

**Tenn. R. App. P. 3. Appeal as of Right; Judgment of the Circuit Court Affirmed and Remanded**

J. STEVEN STAFFORD, J., delivered the opinion of the Court, in which DAVID R. FARMER, J., and HOLLY M. KIRBY, J., joined.

Al H. Thomas and Aaron L. Thomas, Memphis, Tennessee, for the appellant, Vivian Kennard.

William H. Haltom, Jr., and Margaret F. Cooper, Memphis, Tennessee, for the appellees, Arthur M. Townsend, IV, M.D., and Associates Obstetrics & Gynecology, P.C.

**OPINION**

On January 7, 2007, Vivian Kennard ("Plaintiff," or "Appellant") filed a complaint for medical malpractice against Dr. Arthur M. Townsend, IV and Associates Obstetrics & Gynecology, P.C. (together, "Defendants," or "Appellees").[1]  By her complaint, Ms. Kennard

---

[1] In addition to Dr. Townsend and Associates Obstetrics & Gynecology, the complaint also named Methodist Hospitals of Memphis a/k/a Methodist Healthcare Memphis Hospitals, Michael L. Vernon, M.D., Paula Strong, CRNA, and Medical Anesthesia Group, P.A. as defendants.  This appeal, however, is taken only as to the grant of summary judgment in favor of Dr. Townsend and Associates Obstetrics and
(continued...)

alleged that the Appellees had committed medical malpractice against her during the birth of her child in June of 2004. Specifically, Ms. Kennard alleged that the Appellees failed to properly manage her blood pressure during the delivery, thus causing her permanent blindness in both eyes.

On or about February 16, 2007, the Appellees filed a motion for summary judgment, on the ground that Ms. Kennard had failed to establish, through expert proof, that Dr. Townsend deviated from the recognized standard of acceptable professional care in the treatment of Ms. Kennard. The motion for summary judgment was supported by the Affidavit of Dr. Townsend, wherein he stated that he had complied with the applicable standard of care in his treatment of Ms. Kennard. In response to the motion for summary judgment, Ms. Kennard filed the Affidavit of Richard McLaughlin, M.D. In relevant part, Dr. McLaughlin's Affidavit states:

> At the time of these events I was licensed to practice medicine in the State of Missouri and was so licensed and did practice during the year preceding the treatment of Vivian Kennard. I am board certified in Obstetrics & Gynecology since November 1971. I am familiar with the recognized standard of acceptable professional medical practice in these and related fields of medicine, and more specifically, the patient care of someone in the position of Vivian Kennard in an area such as Memphis, Tennessee where the standard of care would be comparable to the cities and facilities at which I have practiced medicine. I am familiar with the standard of care as it existed in 2004. I am familiar with the standard of care in Springfield, Missouri. I gained first hand knowledge of the standard of care of Springfield through my years of practice as an OB/GYN physician in the Springfield community. My experience include[s] care of patients with presentations such as that of Vivian Kennard. I have gained first hand knowledge of the Memphis Medical community through internet search[es] over the years including 2005. I have also reviewed medical cases from various hospitals and have gained insight as to how medicine is practiced in Memphis. In addition, I have read a text written by researchers from the University of Memphis Medical School, Dr. Frank Ling and Dr. Patrick Duff, <u>Obstetrics</u>

---

[1](...continued)
<u>Gynecology</u>.

& Gynecology, Principals for Practice. It is my opinion that the Memphis medical community is similar to the medical community of Springfield, Missouri. Memphis, a Regional Medical Center as is Springfield, draws many patients from Mississippi and Arkansas. Springfield provides care to an 18-county primary service area in southwest Missouri and northern Arkansas. Memphis has the University of Tennessee Medical School with residents practicing primarily at the Regional Medical Center and Methodist University Hospital. There are a similar number of hospitals in Memphis as there are in the Springfield area....

On December 15, 2009, Appellees took Dr. McLaughlin's evidentiary deposition. The case was set for trial on January 25, 2010. On January 6, 2010, Dr. Townsend and Associates Obstetrics filed a motion in limine to exclude Ms. Kennard's expert, Dr. Richard McLaughlin, because Dr. McLaughlin's testimony did not comply with the "locality rule," Tennessee Code Annotated Section 29-26-115.

On or about January 15, 2010, the trial court granted Appellees' motion in limine, thereby excluding Dr. McLaughlin's testimony. Thereafter, the Appellees set their previously-filed motion for summary judgment for hearing on the ground that Ms. Kennard had provided no expert medical testimony against them. There is nothing in the appellate record to indicate that Ms. Kennard opposed the motion for summary judgment on January 19, 2010. The trial court entered an order granting Appellees' motion for summary judgment on the ground that Ms. Kennard's expert testimony had been excluded and that she had provided no additional expert proof against them. This order was made final as to the Appellees by the inclusion of Tennessee Rule of Civil Procedure 54.02 language. Ms. Kennard appeals and raises two issues for review, which we restate as follows:

1. Whether the trial court abused its discretion by excluding the testimony of Appellant's expert, Dr. Richard McLaughlin, on grounds that Appellant failed to establish that Dr. McLaughlin was familiar with the standard of care for obstetricians and gynecologists practicing in Memphis, Tennessee, or that Dr. McLaughlin was familiar with the standard of care for obstetricians and gynecologists practicing in a similar community?

2. Whether the trial court, after finding that Appellant's expert's testimony was inadmissible, properly granted summary

judgment in favor of Dr. Townsend and Associate Obstetrics & Gynecology?

## Exclusion of Dr. McLaughlin's Testimony

A trial court's decision concerning the competency of an expert witness is reviewed by this Court under an abuse of discretion standard. As discussed by this Court in *Carpenter v. Klepper*, 205 S.W.3d 474 (Tenn. Ct. App. 2006):

> A trial court has broad discretion in determining the "admissibility, qualifications, relevancy and competency of expert testimony." *McDaniel v. CSX Transp.*, 955 S.W.2d 257, 263 (Tenn.1997). Questions regarding the qualifications of expert witnesses are left to the trial court's discretion and may be overturned only if that discretion is abused. *McDaniel*, 955 S.W.2d at 263. The Tennessee Supreme Court has defined an abuse of discretion to mean "an erroneous conclusion or judgment on the part of the trial judge—a conclusion that was clearly against logic (or reason) and not justified." *Foster v. Amcon Int'l, Inc.*, 621 S.W.2d 142, 145 (Tenn.1981).

*Carpenter*, 205 S.W.3d at 477.

Tennessee Code Annotated Section 29-26-115 governs medical malpractice cases and provides, in relevant part, as follows:

> **§ 29-26-115. Burden of proof; expert witnesses.**
>
> (a) In a malpractice action, the claimant shall have the burden of proving by evidence as provided by subsection (b):
>
> (1) The recognized standard of acceptable professional practice in the profession and the specialty thereof, if any, that the defendant practices in the community in which the defendant practices or in a similar community at the time the alleged injury or wrongful action occurred;
> (2) That the defendant acted with less than or failed to act with ordinary and reasonable care in accordance with such standard; and
> (3) As a proximate result of the defendant's negligent act or

-4-

omission, the plaintiff suffered injuries which would not otherwise have occurred.

(b) No person in a health care profession requiring licensure under the laws of this state shall be competent to testify in any court of law to establish the facts required to be established by subsection (a), unless the person was licensed to practice in the state or a contiguous bordering state a profession or specialty which would make the person's expert testimony relevant to the issues in the case and had practiced this profession or specialty in one (1) of these states during the year preceding the date that the alleged injury or wrongful act occurred. This rule shall apply to expert witnesses testifying for the defendant as rebuttal witnesses. The court may waive this subsection (b) when it determines that the appropriate witnesses otherwise would not be available.

The requirement contained in Tennessee Code Annotated Section 29-26-115(a)(1) is known as the "locality rule," and it is based upon the premise that "doctors charged with negligence in this State [must] receive a fair assessment of their conduct in relation to the community standards similar to the one in which they practice." *Sutphin v. Platt*, 720 S.W.2d 455, 457 (Tenn. 1986). The burden of demonstrating familiarity with the standard of care applicable to a case rests with the plaintiff. *See Robinson v. LeCorps*, 83 S.W.3d 718, 724 (Tenn. 2002). Under the statute, a medical expert may demonstrate his or her knowledge of the standard of care in one of two ways. *Id*. First, the expert may demonstrate that he or she has first-hand knowledge of the standard of care applicable in the subject community. Tenn. Code Ann. § 29-26-115(a)(1); *Robinson*, 83 S.W.3d at 724; *see also Mabon v. Jackson-Madison County Gen. Hosp*., 968 S.W.2d 826, 831 (Tenn. Ct. App. 1997); *Eckler v. Allen*, 231 S.W.3d 379 (Tenn. Ct. App. 2006). Second, an expert may demonstrate that he or she has first-hand knowledge of the standard of care in a community that is similar to that of the defendant. *Id*. It is, however, the plaintiff's burden to prove that the community in which the proffered expert is familiar is similar to the one in which the defendant physician practices. *Carpenter*, 205 S.W.3d at 483; *Mabon*, 968 S.W.2d at 831.

In order for a doctor-expert to testify that the defendant's medical community is similar to his or her own, the expert must provide a factual basis for the similarity, namely:

The law on expert witnesses, as it exists in Tennessee, requires the expert to have some knowledge of the practice of medicine in the community at issue or a similar community. We believe

that it is reasonable to base such knowledge, among other things, upon information such as the **size of the community**, the existence or non-existence of **teaching hospitals in the community** and the **location of the community**. Without such information, it is difficult to compare communities for the purpose of satisfying the locality rule.

*Roberts v. Bicknell*, 73 S.W.3d 106, 114 (Tenn. Ct. App. 2001) (emphasis added).

For example, in the recent case of *Grisham v. McLaughlin*, No. M2008-00393-COA-R3-CV, 2009 WL 275667 (Tenn. Ct. App. Feb. 4, 2009), *perm. app. denied* (Tenn. Aug. 17, 2009), the plaintiff's medical expert testified, in relevant part, that:

Both Nashville and Cape Girardeau are areas with multiple hospitals and both communities have numerous physicians who practice in the field of orthopedics and orthopedic surgery. Cape Girardeau, like Nashville, has multiple specialists in all the major fields of medicine. Both communities have a number of orthopedists who engage in procedures including total knee replacements.

*Grisham*, 2009 WL 275667 at *3. In *Grisham*, this Court affirmed the trial court's grant of summary judgment in favor of the defendant doctor. In so holding, we specifically stated that the foregoing "statements are too vague to show sufficient similarity. They are so generic that they can apply to New York and Los Angeles as well as Cape Girardeau and Nashville." *Id*. In short, the locality rule requires specificity from an expert who is seeking to prove the similarity of two communities, and the lack thereof constitutes grounds for exclusion of that expert. *Id.; see also Roberts*, 73 S.W.3d at 113.

In the *Carpenter v. Klepper* case, an expert from Richmond, Virginia testified that he had never been to Clarksville and that he had little information about Clarksville's resources; however, the expert testified in detail regarding his own practice in similarly-sized Virginia communities, including the number of beds and resources available in those hospitals, their proximity to a larger city; the Virginia expert further testified that the population size of his community was similar to Clarksville's. *Carpenter*, 205 S.W.3d at 480-83. In the same case, an expert from Louisville, Kentucky testified that his knowledge was based upon implementing national accreditation standards at similar hospitals around Kentucky, and that he had treated patients from communities similar to Clarksville. *Id*. at 478-80. Although both experts in *Carpenter* established their familiarity with their own local standards of care, they did not establish that their communities were similar to Clarksville. *Id*. at 479, 484. In

reviewing the case, this Court looked at the totality of the testimony offered by the experts, and determined that generalities offered by the experts regarding the communities with which they were familiar and the community in which the defendant practiced were not sufficient to establish that the proffered experts were familiar with the standard of care. *Id*. In so holding, we specifically stated that "establishing the similarities in communities is as much a part of the burden of proof under the locality rule as is establishing that the witness practices in a contiguous state." *Id*. at 484 (citing *Bravo v. Summer Reg'l Health Sys., Inc.*, 148 S.W.3d 357, 368-69 (Tenn. Ct. App. 2003)).

In the often-cited case of *Mabon v. Jackson-Madison County General Hospital*, 968 S.W.2d 826, 831 (Tenn. Ct. App. 1997), this Court specifically rejected the idea of a national standard of care. *Id*. at 831. In *Mabon*, the Missouri expert's affidavit alluded to resources that "should have been available" in a community like Jackson, and this Court opined that "a complete lack of knowledge concerning a community's medical resources would be contrary to knowledge of the required standard of care." *Id*. Even though there was no allegation, in *Mabon*, that the Missouri expert's standard of care was different from Jackson's, it was enough that the expert apparently knew nothing about the population of Jackson, the availability of teaching hospitals, the number of doctors in medical specialties in Jackson, or similar factors. *Id*. at 830-31.

Likewise, in *Allen v. Methodist Healthcare Memphis Hospitals*, 237 S.W.3d 293 (Tenn. Ct. App. 2007), the testimony of a Nashville obstetrician/gynecologist was excluded because the hospital for whom he was called as an expert offered no evidence that Nashville and Memphis were similar. In *Allen*, it was not enough that the doctor testified that he interacted with Memphis physicians and nurses at a number of medical lectures and taught a continuing medical education course in Memphis. The Court found that the doctor's credentials demonstrated knowledge of an optimum or national standard of care, but not the standard of care in Memphis, or in a similar community, for purposes of the statute. In so holding, the *Allen* Court cited the case of *Eckler v. Allen* for the proposition that the statute requires personal knowledge, defined as "knowledge gained 'in person without the intervention of another.'" *Allen*, 237 S.W.3d at 297 (quoting *Eckler v. Allen*, 231 S.W3d 379, 387 (Tenn. Ct. App. 2006)).

In *Eckler*, the defendant doctor successfully argued that the plaintiff's expert, a professor from Birmingham, Alabama, should be excluded as an expert because his affidavit simply stated that he "had become familiar" with the standard of care in Memphis by surveying a number of doctors in the Memphis area. In affirming the trial court's grant of summary judgment, this Court adopted defendants' argument:

> Defendants assert that knowledge gained by surveying other

physicians and not by personal or firsthand experience is not sufficient under § 29–26–115(a)(1). They submit that a non-expert could survey physicians in a community if the mere collection of data could constitute knowledge. Defendants assert the statute requires personal, firsthand, or direct knowledge of the applicable standard by an expert who practices in the community or in a similar community. We agree.

*Eckler*, 231 S.W.3d at 386. Although this Court, in *Eckler*, did not go so far as to hold that an expert must have personal knowledge of Memphis, we did hold that the expert's affidavit and supporting documentation must demonstrate a similarity between Memphis and Birmingham. *Id*. at 387.

In *Johnson v. Pratt*, No. W2003-02110-COA-R3-CV, 2005 WL 1364636 (Tenn. Ct. App. June 9, 2005), this Court upheld the exclusion of the plaintiff's expert because the Virginia expert's affidavit did not contain sufficient facts to demonstrate that his opinion regarding the applicable standard of professional care in Memphis was based on his knowledge of the applicable standard in communities similar to Memphis. In so holding, we stated, in relevant part, that:

> The expert is not required to be familiar with all the medical statistics of the community where the physician practices. *Ledford v. Moskowitz*, 742 S.W.2d 645, 648 (Tenn. Ct. App.1987). However, the expert must go further than simply asserting that he or she is familiar with the applicable standard of care. *Mabon v. Jackson-Madison County Gen. Hosp*., 968 S.W.2d 826, 831 (Tenn. Ct. App.1997). The expert must present facts demonstrating how he or she has knowledge of the applicable standard of professional care either in the community in which the defendant physician practices or in a similar community. *See Spangler v. East Tenn. Baptist Hosp*., No. E1999-01501-COA-R3-CV, 2000 WL 222543, at *1-2 (Tenn. Ct. App. Feb. 28, 2000) perm. app. denied (Tenn. Sept. 11, 2000).

*Johnson*, 2005 WL 1364636 at *7. "Generalizations regarding the similarity of the standards of professional care in two contiguous states are not specific enough information to demonstrate that a medical practitioner is qualified under the locality rule to render an opinion in a medical malpractice case and does not comply with the nonmoving party's burden on a motion for summary judgment to set forth *specific facts*." *Id*. at *9 (emphasis

added).

In the recent case of **Johnson v. Richardson**, No. W2009-02626-COA-R3-CV, 2010 WL 3187048 (Tenn. Ct. App. Aug. 12, 2010), *perm. app. denied* (Tenn. Feb. 16, 2011), a case very similar in fact to the one at bar, this Court reviewed the trial court's exclusion of the plaintiff's Springfield, Missouri expert, Dr. Sheppard. The trial court excluded Dr. Sheppard based upon his testimony, wherein he admitted that he had never practiced in Tennessee, had never been to a hospital in Tennessee, had never treated, examined or prescribed medication for a patient in Tennessee, and that he did not know any doctors in Tennessee. *Id*. at *4. Dr. Sheppard admitted that he was not familiar with the standard of care in Memphis; rather, Dr. Sheppard, like Dr. McLaughlin in the instant appeal, asserted that he had knowledge of the standard of care in Springfield, Missouri, and that Memphis and Springfield were similar communities. *Id*. at *6-*7. In support of his position that Memphis and Springfield were similar communities, Dr. Sheppard testified: (1) that the populations were similar, (2) that both communities had the same medical specialties, and (3) that both communities had outlying hospitals. *Id*. To rebut the plaintiff's assertion that Springfield and Memphis were similar communities, the defendant provided the trial court with U. S. Census Bureau records that established that, in 2006, Springfield's population was 153,449, while the 2006 population in Memphis was 676,548. *Id*. at *4. This Court noted that, "[a]s to population, it was demonstrated that Dr. Sheppard was simply incorrect and that the population of the two communities was anything but similar." *Id*. We further noted that Dr. Sheppard's testimony that the communities had similar specialities was more vague than the expert's testimony in **Grisham**, *supra*, and that the presence of outlying hospitals in both communities was insufficient to establish that Memphis and Springfield were similar communities. *Id*. In **Johnson v. Richardson**, we ultimately held that "the trial court properly found that Dr. Sheppard's testimony was inadmissible...[because] Dr. Sheppard failed to establish that the standard of care of the community which he was familiar with, Springfield, Missouri, was similar to Memphis, the defendant's community." *Id*. at *6.

Turning to the record in the instant case, in his evidentiary deposition, Dr. McLaughlin testified that he had never practiced in Memphis and was not familiar with the applicable standard of care in Memphis:

> Q. ...But in terms of your practice as an OB-GYN, you've never practiced anywhere other than Springfield, Missouri, correct, sir?
>
> A. That's been true.
>
> Q. And you acknowledge that you have no personal knowledge

of what the standard of care is for obstetrics and gynecologists in Memphis, Tennessee, do you, sir?

A. No.

Based upon this testimony, under Tennessee Code Annotated Section 29-26-115, Dr. McLaughlin could qualify to testify as an expert only by demonstrating that he knew the standard of care in a community similar to Memphis. To that end, Dr. McLaughlin testified, in relevant part, as follows:

Q. But you believe, and you're expressing the opinion to the court and jury in this case, that Memphis, Tennessee, and Springfield, Missouri are similar communities?

A. Similar medical communities. Yes, sir.

Q. Similar medical communities. Okay. And as I understand what you told Ms. Guy or maybe what you've told the court and the jury is, there are three reasons why you submit they are similar communities.
    Number one, you say they're approximately the same size in terms of population. That was the first thing you said, correct, sir?

A. Yes.

Q. The second thing you said was that they have similar hospitals? Correct?

A. Yes.

Q. Similar hospitals. And then third, you said they have the same specialties, medical specialties in both communities?

A. Specialties and the ability to do diagnostic testing and that sort of thing.

Q. And did I have this correct, those are the three things you've told this court and jury, the three reasons why you believe Memphis, Tennessee, and Springfield, Missouri are similar

medical communities?

A. Well, that plus the review of records that I've done in legal matters.

Q. Well, when you say review of medical records in legal matters, you mean not any care you've given, but the fact that you've testified against Memphis doctors over the years, so you've read medical records?

A. I have–I have sampled the kind of care that Memphis doctors give patients....[a]nd it's similar to what we do here in Springfield.

Concerning his first basis for his opinion that Springfield and Memphis are similar communities, i.e., similar populations, Dr. McLaughlin testified, in relevant part, as follows:

Q. Now let's take those one at a time. As I understand what you've told the court and jury, you think Memphis and Springfield are about the same size because you said–Springfield has a populations of...180,000, and Memphis population is around a million. Is that what you told us?

A. Yes.... I was referring to the Springfield population of being just the immediate...city area of Springfield.

Q. Okay. But the population itself, as far as you know, of Springfield and Memphis are 180,000 versus approximately a million, correct, sir?

A. We have–we have about three-quarters of a million in surrounding areas around Springfield, our drawing area. I was referring to our drawing area.

Q. Okay. But let's take this one at a time.
First of all, in terms of the size of the cities, 180,000 versus you believe about a million correct?

A. Correct.

Q. Now the drawing area, you say that Springfield has a–has a metropolitan area of about 750,000.

You don't know for sure; that's some estimate you have, correct, sir?

A. I–yes, that is an estimate that's advertised by the Chamber of Commerce in Missouri.

Q. Okay. Have you... reviewed the Bureau of Labor statistics in population?

A. No recently, no.

Q. You haven't done anything in order to reach your opinion in this case about the population of Springfield and Memphis being similar, correct?

A. No, I have not.

Q. All right.

A. Not in this case.

Q. And you can't tell us what the population of Memphis–of Memphis, Tennessee metropolitan area is, can you, sir? Because you don't know?

A. Of the general metropolitan area–

Q. Yes, sir.

A. –in Memphis? No, I don't know that specifically.

Q. Okay. And you are aware of the fact that Memphis is actually in a tri-state area in the mid-south: Mississippi and Tennessee and Arkansas?

A. And Arkansas, yes.

Q. And you know that from geography when you took it in

school or looking at maps, correct, sir?

A. Yes.

Q. But you don't know–you have no information as to what the metropolitan area–statistical metropolitan area population of greater Memphis, Tennessee, and the tri-state area is. You don't know that, sir?

A. No.

In support of their motion in limine, the Appellees filed official certified records of the U. S. Census Bureau, reflecting the official populations of Springfield, Missouri and Memphis, Tennessee, in 2004 (the year when the care and treatment at issue was rendered). The U.S. Census Bureau records show that, in 2004, Springfield, Missouri had a city population of 152,543 and a metropolitan population of 392,715. Memphis, Tennessee, on the other hand, had a 2004 city population of 677,861 and a metropolitan population of 1,242,362.

Concerning the second basis for Dr. McLaughlin's opinion that Memphis and Springfield are similar communities, i.e., the existence of similar hospitals and specialties in both communities, he testified, in relevant part, as follows:

Q. ...Now let's move[] to the second area. You've said that Memphis and Springfield have similar hospitals, correct?

A. Yes.

Q. Similar medical facilities, correct?

A. Yes.

Q. Okay. Let's talk about that. First of all, you know what a teaching hospital is, don't you?

A. Yes, I do.

Q. Dr. McLaughlin, a teaching hospital is a hospital like the University of Tennessee, a medical school, isn't it, sir?

A.  Yes.

*                              *                         *

Q.  And Springfield, Missouri does not have a medical school, does it?

A.  No, we do not.

Q.  Okay.  And in terms of the hospitals here–of course, you know about your–the one hospital you have privileges in...[but] you can't tell [us] how many hospitals there are in the Methodist Hospital system in Memphis...can you, sir?

A.  Not for sure, no.

*                              *                         *

Q. ...Can you tell me how many beds there are at Methodist Hospital Germantown...Tennessee?

A.  I cannot tell you precisely, no.

*                              *                         *

Q. ...What about Baptist Hospital?  How many hospitals does the Baptist Healthcare System have in Memphis, Tennessee....

A.  Don't know.

Q.  How many beds are there at any of the hospitals, Baptist–in the Baptist system in Memphis?

A.  Don't know.

*                              *                         *

Q.  How many beds do they have at St. Francis hospital?

A.  I don't know that.

-14-

\*                                    \*                                    \*

Q. And how many beds approximately are there at the VA Hospital in Memphis?

A. I don't know.

\*                                    \*                                    \*

Q. Okay. What about St. Jude? You're familiar with that?

A. Yes.

\*                                    \*                                    \*

Q. There's no research institution in Springfield, Missouri, like St. Jude Hospital, is there, sir?

A. No.

\*                                    \*                                    \*

Q. Okay. And then you've told me you believe Memphis and Springfield are similar communities because they have the same specialties, correct, sir?

A. Yes.

Q. All right. And are you saying that Springfield, Missouri has the same type of specialists in maternal-fetal medicine and all these areas that the hospitals in the Memphis, Tennessee area have?

A. Yes.

Q. But you don't know that of your own knowledge; it's just based on reading medical records, correct, sir?

A. Well, that's in part. But Springfield has several perinatologists. Memphis has many perinatologists and has a

perinatology school for fellowships.

Dr. McLaughlin also testified that he believes Memphis and Springfield are similar communities based upon his review of medical records in connection with his serving as a medical expert in other malpractice cases:

> Q. And as far as this fourth area that you've talked about, about Memphis–the reason you say Memphis and Springfield are similar communities is your review of records.
>     These are records you have reviewed testifying against Memphis doctors, correct?
>
> A. Yes.
>
> Q. Not any personal treatment of any patients that you've ever seen in Memphis because you've never seen any patients personally in Memphis, correct, sir?
>
> A. I guess no. I never have.

Despite the foregoing testimony, in her brief, Ms. Kennard asserts that, even absent Dr. McLaughlin's testimony that Memphis and Springfield have similar populations, Dr. McLaughlin nonetheless established that Memphis and Springfield are similar communities through his other testimony. Specifically, Ms. Kennard claims that Dr. McLaughlin's testimony is similar to that offered by the experts in the cases of *Wilson v. Patterson*, 73 S.W.3d 95 (Tenn. Ct. App. 2001) and *Pullum v. Robinette*, 174 S.W.3d 124 (Tenn. Ct. App. 2004). In both *Wilson* and *Pullum*, this Court held that the respective experts' testimonies were sufficient to establish similarity of the expert's community to the respective defendants' communities. *Wilson*, 73 S.W.3d at 105-106; *Pullum*, 174 S.W.3d at 141.

Relying upon *Wilson* and *Pullum*, Ms. Kennard asserts that these cases "establish that the population size similarity is not a necessary component when establishing a 'similar community' in compliance with the 'locality rule'." *Wilson*, 73 S.W.3d at 105-106; *Pullum*, 174 S.W.3d at 141. Ms. Kennard further argues that the trial court "applied an inaccurate legal standard when it disqualified Dr. McLaughlin under the locality rule" because the trial court excluded Dr. McLaughlin solely based on the population statistics, and "refused to engage in an analysis of medical communities." From our review of the record, however, there is no indication that the trial court only considered the population data regarding Springfield and Memphis. Moreover, there is no indication in the record that the trial court held that a plaintiff must always establish similar populations in order to comply with the

mandates of Tennessee Code Annotated Section 29-26-115. Rather, the record reflects that the trial court considered Dr. McLaughlin's testimony as a whole when rendering its opinion. As stated by the trial court during its ruling from the bench:

> But the expert has to meet certain standards in the form of knowledge of the respective communities. And then as [counsel for Dr. Townsend and Associates Obstetrics] correctly states...the moving party has to establish that the community from which the expert comes is a similar community because that's what I charge the jury is the same or similar community. And I just don't think Springfield, Missouri and Memphis, Tennessee are similar communities based on the testimony from Dr. McLaughlin.

The trial court went on the state, in its order, that "the Court finds that Springfield, Missouri and Memphis, Tennessee are not similar communities, and therefore Richard McLaughlin, M.D. fails to meet the requirements of the locality rule." It is clear to this Court that the trial court did not limit its consideration to the U. S. Census Bureau records alone as Ms. Kennard argues. Nonetheless, because one of the arguments on which Dr. McLaughlin based his opinion that Memphis and Springfield are similar communities was the respective populations, we conclude that it was not error for the court to consider the U.S. Census Bureau records that were filed by the Appellees. These records clearly establish that Springfield and Memphis are not similar in terms of their respective populations. As correctly noted by the trial court, Tennessee Code Annotated Section 29-26-115 speaks to the similarity of communities in general, and not to the similarity of medical communities.

Ms. Kennard further argues that, if an expert testifies that his or her community is similar to the community in which the defendant practices, then the court must accept this testimony as reliable and must find that the expert meets the requirements of the locality rule. This is not a correct statement of the law. It is well settled that the trial court is a gatekeeper for all expert testimony. *See, e.g., McDaniel v. CSX Transp.*, 955 S.W.2d 257, 263 (Tenn. 1997). The decision whether to admit expert testimony lies solely with the trial court and, therefore, "the decision of whether the plaintiff ha[s] proven the similarity of the communities compared by the expert" lies with the trial court. *Johnson v. Richardson*, 2010 WL 3187048 at *6. "The court's role is to determine whether the expert's opinion is based on trustworthy information." *Pullum*, 174 S.W.3d at n. 13 (citing *Church v. Perales*, 39 S.W.3d 149, 167 (Tenn. Ct. App. 2000)). Here, as in the *Johnson v. Richardson* case, the trial court heard the testimony proffered by Dr. McLaughlin, and concluded that his testimony failed to establish that Springfield and Memphis are similar communities.

As set out above, Dr. McLaughlin's testimony that Memphis and Springfield are similar communities, in that they both have similar medical facilities and specialties, is vague at best. Unlike Memphis, Springfield has no teaching hospital, research hospital, nor medical school. Moreover, Dr. McLaughlin's testimony concerning similar specialties is also vague and fails to establish that the medical communities are similar. *See also*, *Johnson v. Richardson*, 2010 WL 3187048, at *2-3.

Furthermore, Dr. McLaughlin's testimony that he knows Springfield and Memphis are similar communities through his review of medical records is not sufficient, standing alone, to establish that the communities are, in fact, similar. *Eckler*, 231 S.W.3d 379, 386. Likewise, it is insufficient for Dr. McLaughlin to claim he has knowledge of the similarity of the Memphis and Springfield communities based upon his review of records. *Id*. Rather, Dr. McLaughlin must point to specific facts indicating that Memphis and Springfield are similar communities. *Johnson*, 2005 WL 1364636, at *9.

From the totality of Dr. McLaughlin's testimony, and the record as a whole, we conclude that Dr. McLaughlin failed to establish that Memphis and Springfield are similar communities. Other than the testimony given by Dr. McLaughlin, Ms. Kennard did not submit any other evidence to support a finding of similarity between the Memphis and Springfield communities. Consequently, we conclude that the trial court did not err in finding that Ms. Kennard failed to establish that her expert was familiar with the standard of care in a community similar to Dr. Townsend's community; therefore, the trial court properly excluded Dr. McLaughlin's testimony.

## Summary Judgment

A trial court's decision to grant a motion for summary judgment presents a question of law. Our review is therefore *de novo* with no presumption of correctness afforded to the trial court's determination. *Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997). "This Court must make a fresh determination that the requirements of Tenn. R. Civ. P. 56 have been satisfied." *Mathews Partners, LLC v. Lemme*, No. M2008-01036-COA-R3-CV, 2009 WL 3172134, at *3 (Tenn. Ct. App., Oct. 2, 2009) (citing *Hunter v. Brown*, 955 S.W.2d 49, 50-51 (Tenn.1977)).

When a motion for summary judgment is made, the moving party has the burden of showing that "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Tenn. R. Civ. P. 56.04. The moving party may accomplish this by either: (1) affirmatively negating an essential element of the non-moving party's claim; or (2) showing that the non-moving party will not be able to prove an essential element at trial. *Hannan v. Alltel Publ'g Co.*, 270 S.W.3d 1, 8-9 (Tenn. 2008). However,

"[i]t is not enough for the moving party to challenge the nonmoving party to 'put up or shutup' or even to cast doubt on a party's ability to prove an element at trial." *Id*. at 8. If the moving party's motion is properly supported, "[t]he burden of production then shifts to the nonmoving party to show that a genuine issue of material fact exists." *Id*. at 5 (citing *Byrd v. Hall*, 847 S.W.2d 208, 215 (Tenn. 1993)). The non-moving party may accomplish this by: "(1) pointing to evidence establishing material factual disputes that were overlooked or ignored by the moving party; (2) rehabilitating the evidence attacked by the moving party; (3) producing additional evidence establishing the existence of a genuine issue for the trial; or (4) submitting an affidavit explaining the necessity for further discovery pursuant to Tenn. R. Civ. P. Rule 56.06." *Martin v. Norfolk S. Ry. Co.*, 271 S.W.3d 76, 84 (Tenn. 2008) (citations omitted).

When reviewing the evidence, we must determine whether a factual dispute exists. "Summary judgment procedure is not a substitute for trial. It is only when there is no disputed issue of material fact that a summary judgment should be granted. If such fact issue is present, the matter must not be resolved by a battle of affidavits, but must be resolved by a trial on the merits." *Stone v. Hinds*, 541 S.W.2d 598, 599 (Tenn. Ct. App. 1976) (citations omitted). In evaluating the trial court's decision, we review the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in the nonmoving party's favor. *Stovall v. Clarke*, 113 S.W.3d 715, 721 (Tenn. 2003). If we find a disputed fact, we must "determine whether the fact is material to the claim or defense upon which summary judgment is predicated and whether the disputed fact creates a genuine issue for trial." *Mathews Partners, LLC*, 2009 WL 3172134, at \*3 (citing *Byrd*, 847 S.W.2d at 214). "A disputed fact is material if it must be decided in order to resolve the substantive claim or defense at which the motion is directed." *Byrd*, 847 S.W.2d at 215. A genuine issue exists if "a reasonable jury could legitimately resolve the fact in favor of one side or the other." *Id*. "Summary judgment is only appropriate when the facts and the legal conclusions drawn from the facts reasonably permit only one conclusion." *Landry v. S. Cumberland Amoco, et al.*, No. E2009-01354-COA-R3-CV, 2010 WL 845390, at \*3 (Tenn. Ct. App. March 10, 2010) (citing *Carvell v. Bottoms*, 900 S.W.2d 23 (Tenn. 1995)).

In the instant case, the Appellees filed their motion for summary judgment on the ground that Ms. Kennard did not present expert testimony that Dr. Townsend deviated from the recognized standard of acceptable professional practice, causing Ms. Kennard injury, as required by Tennessee Code Annotated Section 29-16-115. After the trial court granted the Appellees' motion in limine to exclude Dr. McLaughlin's testimony, the Appellees set their motion for summary judgment for hearing. As mentioned above, there is no evidence in the record that Ms. Kennard opposed the motion for summary judgment. Rather, the following exchange occurred before the trial court, when the parties approached the court with the unopposed motion for summary judgment:

-19-

MS. COOPER [attorney for Dr. Townsend and Associates Obstetrics]: But we would like to address the Court on an Order dismissing us from the case. Mr. Walk [attorney for Ms. Kennard] and I agree that my client should no longer be in the case, but Mr. Walk would like to enter an order granting our motion for summary judgment which is set for this Friday which he would not oppose. But it isn't on your Court's docket until Friday, and we would like to get something entered today if Your Honor would be willing to enter an order on the motion for summary judgment.

THE COURT: Mr. Walk?

MR. WALK: That's correct. It's one of those where, obviously, the door was left open to bring him [Dr. McLaughlin] live or whatever. We're choosing not to do it. In other words, affidavits to not bring him live and so trying to, you know, aid Ms. Cooper...from having to do all this preparation for trial. We're going to go ahead and resolve that now.

THE COURT: All right. You may enter the order.

The trial court's order granting Dr. Townsend and Associates Obstetrics' motion for summary judgment indicates that the motion was granted because:

The Court previously on January 15, 2010 excluded all the plaintiff's expert testimony that Dr. Townsend deviated from the recognized standard of acceptable professional practice, and upon statements by counsel for the plaintiff that in light of the Court's previous ruling excluding expert testimony, that it has no additional expert proof to offer at the trial of this cause against [Dr. Townsend and Associates Obstetrics] concerning deviations from the applicable standard of care.

It appears that the order granting the motion for summary judgment was unopposed by Ms. Kennard. However, even after the trial court excluded Dr. McLaughlin's testimony, Ms. Kennard was free to establish, by additional proof, that Dr. Townsend deviated from the standard of care. In *Pullum*, we stated that, "even a grant of partial summary judgment based upon insufficiencies in medical expert pre-judgment testimony can be set aside pursuant to a motion to alter or amend accompanied by additional evidence." *Pullum*, 174

S.W.3d at 141 (citing **Stovall v. Clarke**, 113 S.W.3d 715, 721 (Tenn. 2003)).  Here, Ms. Kennard neither attempted to rehabilitate Dr. McLaughlin's testimony, nor filed a motion to alter or amend the order granting summary judgment.  Moreover, even though the attorney for Ms. Kennard stated that the door was open to bring Dr. McLaughlin "live," Ms. Kennard specifically chose not to do that.

Notwithstanding the fact that the motion for summary judgment and the order thereon were unopposed at the trial level, Ms. Kennard admittedly did not proffer any expert testimony that Dr. Townsend deviated from the recognized standard of acceptable professional practice, causing injury to Ms. Kennard, as required in medical malpractice actions.  Tenn. Code Ann. § 29-26-115.  Consequently, there is no genuine issue of material fact to be decided by a trier of fact.  The trial court, therefore, properly granted summary judgment in favor of the Appellees.

For the foregoing reasons, we affirm the order of the trial court granting summary judgment in favor of Appellees.  We remand for such further proceedings as may be necessary.  Costs of this appeal are assessed against the Appellant, Vivian Kennard, and her surety.

_____
J. STEVEN STAFFORD, JUDGE